# STATE OF MARYLAND *v.* WILLIAM L. ADAMS

[No. 52, September Term, 1981.]

*Decided July 19, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Michael A. Anselmi, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*George L. Russell, Jr.,* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

This case involves a claim of prosecutorial vindictiveness allegedly resulting from the filing of additional criminal charges against the defendant after the original charging document had been dismissed on the defendant's motion.

## I

The pertinent facts are these. On September 24, 1979, William L. Adams was charged in the District Court of Maryland with having conspired with William Simpson at a designated place and during a designated time period "to violate the gambling laws, to wit Lottery of the State of Md. . . . in violation of the Common Law of Md." After Adams requested a trial by jury in the Criminal Court of Baltimore, he moved to dismiss the charging document on the ground

that it had not been signed by a judicial officer as required by Maryland District Rule 711 b 2. The motion was granted on January 16, 1980. The following day, a new charging document was filed against Adams in the District Court of Maryland. It contained three counts, each of which alleged that Adams, at the place and during the time period designated in the original charging document, conspired with William Simpson "to violate the gambling (lottery) laws of the State of Maryland." Each count specified that the conspiracy violated a section of Art. 27 of the Maryland Code (1957, 1976 Repl. Vol.), *i.e.,* respectively, §§ 360, 361 and 362, as well as the common law of the State. Once again, Adams prayed a jury trial in the Criminal Court of Baltimore where he moved to dismiss the charges on the ground that the prosecutor had acted vindictively in filing three separate conspiracy counts against him after he had successfully moved to dismiss the earlier single count charging document. Adams asserted that the new charging document subjected him to a potential punishment three times as great as that under the original charging document — from a one-year term of imprisonment and a $1,000 fine to a three-year term and a $3,000 fine.[1] Adams claimed that he had exercised a constitutional or procedural right in having the first charging document dismissed and that the institution of the new charging document, increasing the charges against him, gave rise to the appearance of vindictiveness, together with a realistic apprehension of such vindictiveness in contravention of the due process clause of the Fourteenth Amendment. Adams relied primarily on *United States v. Goodwin,* 637 F.2d 250 (4th Cir. 1981).

At the hearing on the motion to dismiss, Adams conceded that there was no evidence of actual vindictiveness on the part of the prosecutor. Nevertheless, he argued that under *Goodwin,* a presumption of vindictiveness exists in every

---

**1.** Section 360 of Art. 27 proscribes the keeping of a house, office, or other place for the purpose of selling lottery tickets. Section 361 prohibits the owner of any house or office from permitting the use thereof as a place for selling lottery tickets. Section 362 proscribes, *inter alia,* the possession of lottery tickets in this State.

case where new criminal charges are filed following the successful exercise by a defendant of a constitutional or other right in having earlier charges dismissed. Adams contended that even if the prosecutor was allowed to rebut the presumption, no adequate rebuttal evidence existed. The State responded that "the mere [chronological] fact that additional charges are filed, at some [later] period in time" does not automatically create prosecutorial vindictiveness. It maintained that the new charges were also obtained simultaneously against thirty-seven other codefendants of Adams, who were similarly recharged. The new charges were brought, the State argued, in response to another defendant's motion to dismiss the original charging document for "not charging a cognizable crime." The State explained that it was acting with an "excess of caution" in order to "avoid duplicity, . . . to apprise the defendant[s] of the nature [of the crime charged] . . . and to protect the defendant[s] against double jeopardy." In addition, the State stipulated that if Adams were convicted on the charges, they would be merged, thereby negating any possibility of increased punishment. The State suggested that its explanation rebutted the presumption of a "realistic apprehension of prosecutorial vindictiveness," if indeed one existed.

The trial judge (Thomas, J.) denied Adams' motion to dismiss. He ruled that "there is [no] evidence of any realistic apprehension that the prosecutor . . . retaliated because the defendant . . . exercised his right to question the legality of the original charging document." The court also stated that even if Adams' situation was one where "the mere appearance of vindictiveness gives rise to a . . . presumption of vindictive motive . . . it would be a rebuttable [one]. . . . [T]he burden would be shifted to the prosecutor to show that his decision was justified by independent reasons or intervening circumstances which dispel the appearance of vindictiveness." Applying this test, the court found that the prosecutor's actions were in the public interest "and not calculated to deter or threaten the defendant for exercising his constitutional rights." Therefore, the court held that even if

a presumption did arise, it was refuted by the State's explanation.

The Court of Special Appeals reversed the lower court's judgment, basing its decision on the Fourth Circuit's holding in *Goodwin, supra.* In that case a United States park policeman had stopped defendant Goodwin for speeding on the Baltimore-Washington Parkway. As the officer was questioning Goodwin, he suddenly placed the car in gear and sped away, knocking the officer to the ground. A high speed police chase thereafter ensued, but Goodwin successfully eluded capture. The next day the officer filed a complaint in the United States District Court, charging Goodwin with misdemeanor assault and several petty offenses. Subsequently, Goodwin was apprehended and a trial date was set. Goodwin, however, fled the jurisdiction before the trial. Three years later, he was apprehended in another jurisdiction and returned to Maryland for trial. The case was initially assigned to a federal prosecutor whose authority was limited to trying misdemeanor charges only. Plea negotiations failed and Goodwin requested a jury trial in the district court. Responsibility for the case was then transferred to a more experienced prosecutor who, having decided that Goodwin's conduct merited more severe charges, obtained a four-count indictment charging Goodwin with one felony count of forcibly assaulting a federal officer and three related counts. Goodwin was convicted on the felony count and on one misdemeanor count. Thereafter, he moved to set aside the verdict on the ground of prosecutorial vindictiveness. Emphasizing the Supreme Court's prohibition of judicial or prosecutorial vindictiveness as outlined in *North Carolina v. Pearce,* 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), and *Blackledge v. Perry,* 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974), respectively, Goodwin claimed that filing of the felony indictment on the heels of his request for a jury trial created an impermissible appearance of retaliation. The District Court denied the motion, finding that the prosecutor had dispelled any appearance of vindictiveness.

The Fourth Circuit, relying on *Pearce* and *Blackledge,*

*supra,* reversed, holding that the due process clause of the Fourteenth Amendment prohibits a prosecutor from bringing increased charges against a defendant after he has exercised his right to a jury trial, unless the Government could show by objective evidence that the escalated charges could not have been brought before the defendant invoked his right. 637 F.2d at 253. Finding that the circumstances of Goodwin's felony indictment gave rise to a genuine risk of retaliation, the court adopted a virtually unrebuttable legal presumption to "spare courts the unseemly task of probing the actual motives of the prosecutor where objective circumstances suggest a realistic possibility of vindictiveness." *Id.* at 255.

The Court of Special Appeals, applying the rationale of *Goodwin,* held that the "objective circumstances" of the case before it did indeed "suggest a realistic possibility of vindictiveness." Thus, it refused to adopt the balancing test urged by the State, whereby the court would have had to weigh the State's explanation for its behavior against the defendant's claims of retaliation. 48 Md. App. 447, 452, 428 A.2d 476 (1981). Instead, since the prosecution could not show that the increased charges could not have been brought before Adams' motion to dismiss was filed, the court found that the *Goodwin* "presumption of vindictiveness" had not been rebutted. It reversed the judgment of the lower court, ordering in effect that the charging document filed against Adams be dismissed. We granted certiorari to resolve the important constitutional issues raised in the case.

## II

The Fourth Circuit's decision in *Goodwin, supra,* was recently reversed by the Supreme Court. *United States v. Goodwin,* U.S., 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982). In rejecting the presumption of vindictiveness embraced by the Fourth Circuit, the Court completed the trilogy started with *Pearce* and *Blackledge, supra.* In Pearce, the Court held that vindictiveness must play no part in a judicially imposed

sentence received by a defendant who has successfully attacked his first conviction. Furthermore, appealing defendants must also "be free [] of apprehension of such a retaliatory motivation on the part of the sentencing judge." 395 U.S. at 725. Therefore, the Court also ruled that following an appeal, a defendant may not be sentenced more severely unless based upon "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* at 726. In essence, this holding created a presumption of vindictiveness, rebuttable only by "objective information in the record justifying the increased sentence." *Goodwin,* at 4698.

*Blackledge* expanded the protection of the due process clause to post trial prosecutorial conduct. Blackledge, a prison inmate, was convicted of misdemeanor assault after an altercation with another prisoner. When he exercised his statutory right to a trial *de novo,* the prosecutor obtained a new indictment covering the same incident, but charging felony assault. Blackledge pleaded guilty to the felony and later sought habeas corpus relief. Initially, in reviewing Blackledge's case, the Supreme Court noted that although the "Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal," it is offended "by those that pose a realistic likelihood of 'vindictiveness.'" 417 U.S. at 27. Relying on *Pearce, supra,* the Court held that the case before it did "pose a realistic likelihood of vindictiveness," explaining that due to the considerable incentive the State had in "discouraging convicted misdemeanants from appealing," the threat of prosecutorial retaliation could insure that only the most hardy defendants would contest their convictions. *Id.* at 27-28. Thus, as in *Pearce,* the Court found that the likelihood of vindictiveness warranted a presumption that would free defendants of apprehension concerning the retaliatory motives of prosecutors.

In *Goodwin,* however, the Supreme Court narrowed the scope of its holdings in *Pearce* and *Blackledge.* The Court held that in the pretrial context presented by the case, nei-

ther a "realistic likelihood" nor a presumption of vindictiveness existed. Indeed, the Court accepted without reservation the Government's argument that a prosecutor's charging decision is presumptively lawful and therefore prosecutors are not required to sustain any burden of justification for an increase in charges. 50 U.S.L.W. at 4700, fn. 19. Implicit in this acceptance is the recognition that even if tendered evidence supports a finding of a realistic likelihood of vindictiveness, the Government would have the opportunity to rebut any such finding.

In explaining why it refused to adopt the Fourth Circuit's inflexible presumption of prosecutorial vindictiveness in a pretrial setting, the Court stated the following reasons, among others:

> (1) In the course of preparing for trial, prosecutors may come to realize that information possessed by the State has a broader significance than originally attributed to it;
> (2) At the pretrial stage, a prosecutor's "assessment of the proper extent of prosecution may not have crystallized," whereas, once a trial begins it is far more likely that a prosecutor has been able to make a more informed determination;
> (3) A defendant is expected, in a pretrial setting, to exercise procedural rights that necessarily create some additional work for the prosecutor, such as motions to suppress evidence and to challenge the sufficiency and form of an indictment; and,
> (4) It is unrealistic to assume that a prosecutor's inevitable reaction to such motions is to seek to penalize and deter. *Id.* at 4699-4700.

Furthermore, the Court stated that a prosecutor should have the freedom, at least in the pretrial stage, to exercise the broad discretion of his office to ascertain society's continuing interest in prosecution, *i.e.,* "[a]n initial decision should not freeze future conduct." *Id.* at 4700 (footnote omitted). Moreover, in acknowledging that initial charges

filed by a prosecutor may not adequately reflect the degree to which an individual is "legitimately subject to prosecution," the Court pointed out that in the case before it the prosecutor who obtained the increased charges submitted an affidavit setting forth several reasons for his action. These reasons included the defendant's lengthy history of violent crime, his failure to appear for trial as scheduled, the prosecutor's belief that the defendant had committed perjury at his preliminary hearing and the defendant's involvement in major narcotics transactions. *Id.* at 4697, fn. 2.

Additionally, the Court emphasized that a special presumption on the defendant's behalf was not created simply by invocation of the right to jury trial. The Court explained that unlike *Blackledge,* no duplicative expenditures were incurred as a result of the defendant's request, and as compared to *Pearce,* no judge was asked to do over what he thought he already had done correctly. Thus, the deep seated institutional bias against retrying previously decided issues, which might have created a favorable presumption for the defendant, was not offended. Finally, the Court conceded that in an appropriate case a defendant might be able to prove objectively that a prosecutor did act vindictively, but it made clear that, in the absence of a presumption, the "mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *Id.* at 4700.[2]

---

**2.** Every federal circuit, other than the fourth, that has considered the question of prosecutorial vindictiveness, has at a minimum either explicitly or implicitly adopted some type of balancing approach to allow the Government to rebut a finding of a "realistic likelihood of vindictiveness." *See, e.g.,* Koski v. Samaha, 648 F.2d 790 (1st Cir. 1981); United States v. Ricard, 563 F.2d 45 (2nd Cir. 1977), *cert. denied,* 435 U.S. 916, 98 S. Ct. 1471, 55 L. Ed. 2d 507 (1978); United States v. Litman, 661 F.2d 17 (3rd Cir. 1981), *cert. denied,* 454 U.S. 1150, 102 S. Ct. 1016, 71 L. Ed. 2d 304 (1982); Jackson v. Walker, 585 F.2d 139 (5th Cir. 1978); Hardwick v. Doolittle, 558 F.2d 292 (5th Cir. 1977), *cert. denied,* 434 U.S. 1049, 98 S. Ct. 897, 54 L. Ed. 2d 801 (1978); United States v. Andrews. 633 F.2d 449 (6th Cir. 1980) (en banc), *cert. denied,* 450 U.S. 927, 101 S. Ct. 1382, 67 L. Ed. 2d 358 (1981); United States v. Anderson, 514 F.2d 583 (7th Cir. 1975); United States v. Partyka, 561 F.2d 118 (8th Cir. 1977), *cert. denied,* 434 U.S. 1037, 98 S. Ct. 773, 54 L. Ed. 2d 785 (1978); United States v. Motley, 655 F.2d 186 (9th Cir. 1981); United States v. Griffin, 617 F.2d 1342 (9th Cir.), *cert. denied,* 449 U.S. 863, 101 S. Ct. 167, 66 L. Ed. 2d 80 (1980); United States v. Jamison, 505 F.2d 407 (D.C. Cir. 1974). Similarly, state courts that have considered the issue have also adopted balancing tests. These courts allow prosecutors

III

The Supreme Court's decision in *Goodwin* is manifestly applicable to the case before us. Both cases involve rights asserted at the pretrial stage, and both contain either a finding or a concession negating actual vindictiveness. Indeed, the right invoked by Goodwin, that of a jury trial, is far more central to our concept of justice than Adams' motion to dismiss the charging document for lack of a judicial officer's signature.

It is true, of course, that a defendant's ability to exercise his constitutional rights must not be chilled by heavy-handled prosecutorial conduct. It is equally true, however, that good faith alterations in a prosecutor's approach to a case should not automatically abrogate the entire potential culpability of a defendant. In the instant case, the State indicated that the new charges were brought against Adams as a result of another defendant's motion to dismiss the original charging document for failure to state an offense. Adams has not presented any objective evidence of bad faith on the part of the State. Adams' subjective fears, standing alone, are hardly sufficient in light of *Goodwin's* rejection of a pretrial presumption of vindictiveness. The trial court below went beyond the requirements of *Goodwin* and weighed both Adams' and the State's claims. That court expressly found that Adams had not made out a prima facie case of a "realistic likelihood of vindictiveness." Nonetheless, exercising caution, the court further found on the record that even assuming that Adams had established

the opportunity to present objective evidence to refute a defendant's contention of vindictiveness. *See, e.g.,* Johnson v. State, 396 A.2d 163 (Del. 1978); People v. Walker, 84 Ill.2d 512, 419 N.E.2d 1167 (1981); Cherry v. State, Ind., 414 N.E.2d 301 (1981); State v. Alexander, 290 N.W.2d 745 (Minn. 1980); State v. Stevens, 96 N.M. 627, 633 P.2d 1225 (1981); Com. v. Ward, 493 Pa. 115, 425 A.2d 401, *cert. denied,* 451 U.S. 974, 101 S. Ct. 2055, 68 L. Ed. 2d 354 (1981); *cert. denied,* 451 U.S. 974, 101 S. Ct. 2055, 68 L. Ed. 2d 354 (1981); United States v. Schiller, 424 A.2d 51 (D.C. 1980), *cert. denied,* 451 U.S. 964, 101 S. Ct. 2035, 68 L. Ed. 2d 341 (1981); Atchak v. State, 640 P.2d 135 (Alas. App. 1981); State v. Hinton, 123 Ariz. App. 575, 601 P.2d 338 (1979); State v. Anonymous, 36 Conn. Supp. 338, 420 A.2d 910 (1980); Ronk v. State, 578 S.W.2d 120 (Tex. Crim. 1979).

a prima facie case, the prosecutor's explanation was sufficient to rebut it. Due process commands courts to imbue the criminal justice system with fairness — it does not mandate inappropriate and inflexible palliatives.

> *Judgment of the Court of Special Appeals vacated; case remanded to that Court with directions to affirm the judgment of the Criminal Court of Baltimore and to remand the case to that Court for further proceedings in accordance with this opinion.*
> *Costs to be paid by appellee.*