174

58 A.3d 514

**Michael ROBINSON, Jr.**

v.

**STATE of Maryland.**

**No. 2332, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Dec. 21, 2012.

George Harper, Upper Marlboro, MD, for appellant.

Sarah Page Pritzlaff (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: KRAUSER, C.J., WOODWARD, GRAEFF, JJ.

GRAEFF, J.

A jury sitting in the Circuit Court for Prince George's County convicted appellant, Michael Robinson, of second-degree assault. The court sentenced appellant to five years, with all but one year suspended, to be served on county home detention.

Appellant presents multiple questions for our review,[1] which we have reorganized and rephrased slightly:

1. Did the circuit court err in denying appellant's request for a hearing on his motion to dismiss for vindictive prosecution?

2. Did the circuit court err in denying appellant's motion to dismiss the charges based on the State's failure to file a bill of particulars?

3. Was the evidence sufficient to support appellant's conviction for second degree assault?

4. Did the circuit court err in giving jury instructions on both intentional and reckless conduct?

5. Did the circuit court err in refusing to give appellant's requested jury instruction on defense of others?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 22, 2010, appellant visited Club Elite, a night club in Prince George's County, Maryland, to celebrate the birthday of his friend, Patrick Young. He arrived between 11:00 p.m. and 12:00 a.m. Approximately half an hour later, he noticed security guards removing Mr. Young and Stanley Fields, another one of his friends, from the club. Appellant followed Mr. Young and Mr. Fields outside, and he saw them engaged in a verbal dispute with several other men in the parking lot. After one of the men threw a punch, the dispute escalated into a fistfight.

---

1. In his brief, appellant presents six questions. As his original questions 4 and 5, quoted as follows, address the same legal issue, we have combined them into question 4.

 4. Did the trial court abuse its discretion in providing the jury a duplicitous second degree assault instruction, which included both State theories of intentional and reckless conduct?

 5. Did the trial court abuse its discretion in refusing to give [a]ppellant's requested second degree assault instruction, grounded only in intentional conduct?

Deputy Alvin Lide, a member of the Prince George's County Sheriff's Office, was working as a security guard at Club Elite that evening. Deputy Lide began his career in law enforcement in 1996, and he had worked part-time at Club Elite since approximately 1997. After the fight broke out, he and Deputy Ecolia Moore,[2] another member of the Prince George's County Sheriff's Office who provided security at Club Elite, closed down the club, and attempted to break up the fight. Appellant hit Deputy Lide with his car while Deputy Lide was attempting to break up the fight in the parking lot.

The State initially filed criminal charges against appellant as a result of the incident, but these charges were nol prossed on July 19, 2010. On August 12, 2010, the State again charged appellant with second degree assault, attempted second degree assault of a law enforcement officer, and reckless endangerment. Appellant's first trial, which ended in a mistrial, began on July 11, 2011. On October 13, 2011, the trial that is the subject of this appeal began.

The State called two witnesses: Deputy Lide and Deputy Moore. Deputy Lide testified that, as people were exiting the club that night, he and Deputy Moore stood outside with their backs to the parking lot.[3] Deputy Lide heard someone behind him yelling "officer, officer, fight." As he turned around to look, he saw a crowd of people gathered. He walked to where he could see past the crowd, and he saw Mr. Fields lying on the ground with "about four or five people jumping up and down on him, stomping on him." Deputy Lide and Deputy Moore ran to the middle of the parking lot, at which point all but one of the people attacking Mr. Fields ran away. Deputy Lide struck the remaining assailant with his baton.

---

**2.** At the time of trial Deputy Moore's last name was Woodmeyer. In this opinion, we refer to her by her name and title at the time of the incident: Deputy Moore.

**3.** While providing security at the club, Deputy Lide wore his police uniform.

The assailant started to run away, and Deputy Lide pursued him. During the chase, Deputy Lide heard a car coming from behind him. He heard the sound of the car's engine revving, and "[i]t kept getting louder and louder and it was coming faster." Deputy Moore, who was standing nearby, testified that she saw the car pass by her and turn toward Deputy Lide and the assailant, "coming really fast" and she saw people around the car "getting out of the way or at least attempting to." As the car approached, she screamed for the driver to stop. Deputy Lide turned around, at which point the car swerved toward him and struck him, throwing him into the air and knocking his baton, radio, and phone off his person and to the ground. Prior to impact, Deputy Lide saw the driver of the vehicle, who he identified as appellant.

While Deputy Lide was in the air following the impact, Deputy Moore started shooting at the car. Deputy Lide also fired three shots at appellant after he landed back on his feet. As he was firing, he saw appellant duck down, and at that point, he stopped shooting. Appellant then sat up, put the car in reverse, and backed up as far as he could given other cars parked behind him. Deputy Moore fired another shot at appellant as he was backing up the car.

Deputy Lide suffered from a torn rotator cuff as a result of appellant's car hitting him. Because he had discharged his gun, he was subjected to an internal investigation. At the conclusion of the investigation, Deputy Lide remained in his position.

After Deputy Lide and Deputy Moore testified, the State rested its case. Appellant moved for judgment of acquittal. He argued that "the State has failed to produce a prima facie case .... all that the State has shown is that [appellant] was shot after a case of automobile negligence." The Court denied the motion, stating "[t]he case is a prima facie case."

Appellant then presented his defense. In addition to his own testimony, described below, appellant presented four witnesses. Two of appellant's friends, William Cunningham and Mr. Young, testified that they saw Deputy Lide and

Deputy Moore shooting at appellant as he drove his car in reverse. Kevin Eaton, another friend who witnessed the events outside of Club Elite, testified that, prior to the shooting, he saw appellant's car "bobbing and weaving" through the crowd as people were running. Finally, Mr. Fields testified that, before he was attacked, appellant attempted to diffuse the situation and break up the fight.

Appellant testified that he attempted to break up the fight in the parking lot. Believing it was over, he went back in the club to check on a friend who was still inside. He found his friend and then returned outside to go to his car. On his way, he saw Mr. Young's car, with its doors open and engine running. He got out of his car, turned off his friend's vehicle, and saw the group of men attacking Mr. Fields in the parking lot. Appellant went to aid Mr. Fields and was trying to get him to get up off of the ground "because some of the guys had started running off because they said the police [were] coming." Appellant tried to get Mr. Fields's attention, but he was unable to. He ran back to his vehicle. He planned to get Mr. Fields in the car "because [Mr. Fields] was unable to walk or even comprehend at the time."

When appellant pulled out of the parking space, he saw a young woman attempting to avoid his car. He "turned to avoid striking her[.]" As appellant pulled up to Mr. Fields, but before he reached him, he saw someone in front of his car. He slammed on the brakes and "put the car in reverse just to back up." At the time, he thought "wow, I almost hit this guy." As he was backing up, shots were fired. Appellant testified that he did not intentionally swerve towards Deputy Lide, but he may have turned toward him as he sought to avoid hitting the young woman. He testified that his car did not actually hit Deputy Lide, but rather, it stopped "maybe three, four, five steps" from the officer. Appellant saw Deputy Lide attempt to get out of the way of the car by putting his hand out.

Appellant was shot seven times in the legs and torso, and he suffered permanent nerve damage from one of the wounds to

his legs. After his car came to a stop, Deputy Moore pulled him from the car and stood over him with her knee on his back. Deputy Moore released appellant when other officers arrived. Appellant was then taken to the hospital in an ambulance.

After the defense rested, appellant renewed his motion for judgment of acquittal. He stated that "no rational trier of fact could find [him] guilty beyond a reasonable doubt," and again argued that "all that the State has proved here today is that, for a simple act, perhaps of negligence," appellant was "shot repeatedly." He argued that "[t]hat does not qualify as an assault." The court again denied his motion.

The case was submitted to the jury, and the jury found appellant guilty of second degree assault. On October 18, 2011, appellant filed a Motion for New Trial And/Or Motion to Dismiss And/Or Motion for Appropriate Relief. After the motion was denied, appellant was sentenced, and this timely appeal followed.

## DISCUSSION

### I.

### Vindictive Prosecution

In the circuit court, appellant filed a motion to dismiss for retaliatory prosecution, and he requested a hearing. Appellant argued that the charges against him initially had been nol prosed, and then he was recharged after he "filed a notice of intent to file suit against the police[.]" Counsel alleged that the new charges were based on a desire to retaliate for the civil suit, and he asked to call the two officers to testify to the sequence of events. The court stated that appellant could raise the argument with the jury, and it denied the motion to dismiss without an evidentiary hearing.

Appellant contends that the circuit court erred in failing to grant him a hearing on his motion to dismiss due to "vindictive, selective, and/or retaliatory prosecution." He argues that the charges against him were improper because they

were motivated by his act of filing a civil suit against Prince George's County for acts of brutality, i.e., shooting him as he was backing away.

The State contends that the trial court "properly determined that [appellant's] allegations of selective prosecution failed to warrant an evidentiary hearing." It asserts that appellant's "mere allegation of bad faith, unsupported by objective evidence, was insufficient to warrant a hearing."

The United States Supreme Court has made clear that it is improper for the State to retaliate against a person for exercising a legal right. *Bordenkircher, Penitentiary, Superintendent v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604, *r'hng denied,* 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978). In *Bordenkircher,* the Court explained:

> To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, *see North Carolina v. Pearce* [395 U.S. 711, 738, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) ] (opinion of Black, J.), and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional."

*Id.* (quoting *Chaffin v. Stynchcombe,* 412 U.S. 17, 32–33 n. 20, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)). "A selective-prosecution [or vindictive prosecution] claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong,* 517 U.S. 456, 463, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996).[4]

---

4. This Court has explained that prosecutorial misconduct due to selective prosecution "occurs when the State seeks out persons for prosecution based on impermissible factors, such as race, or the exercise of constitutional rights, such as freedom of speech," and vindictive prosecution "occurs when the State seeks to impose a harsher penalty upon a defendant in retaliation for the defendant's decision to exercise a constitutional right". *McNeil v. State,* 112 Md.App. 434, 463 n. 10, 685 A.2d 839 (1996).

In *State v. Adams,* 293 Md. 665, 666, 447 A.2d 833 (1982), the Court of Appeals addressed a claim of prosecutorial vindictiveness when the State filed three separate criminal charges against Adams after he successfully moved to dismiss an earlier charge, involving a single count. The Court rejected this claim, stating that Adams had presented "no evidence of actual vindictiveness" supporting his allegation that the prosecutor retaliated against him based on his exercise of his right to challenge the legality of the charging document. *Id.* at 667, 447 A.2d 833. The only evidence Adams pointed to was that, after he had successfully moved to dismiss the charges against him based on a defective charging document, a new charging document was filed that increased the charges against him. *Id.* at 667, 447 A.2d 833. Noting that there was no presumption of vindictiveness in the pretrial setting, *id.* at 672, 447 A.2d 833, the Court stated that "Adams' subjective fears, standing alone," were "hardly sufficient" to require a finding of vindictiveness. *Id.* at 674, 447 A.2d 833. The Court noted that "a prosecutor's charging decision is presumptively lawful," and "a prosecutor should have the freedom, at least in the pretrial stage, to exercise the broad discretion of his office to ascertain society's continuing interest in prosecution, *i.e.,* 'an initial decision should not freeze future conduct.' " *Id.* at 672, 447 A.2d 833 (quoting *United States v. Goodwin,* 457 U.S. 368, 382, 384 n. 19, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)). *Accord McNeil v. State,* 112 Md.App. 434, 463, 685 A.2d 839 (1996) ("The State enjoys wide discretion in its decision to prosecute ... and the judiciary is ordinarily reluctant to inquire into the executive's charging decisions.").

In *United States v. Miller,* 948 F.2d 631, 632–33 (10th Cir.1991), *cert. denied,* 503 U.S. 912, 112· S.Ct. 1278, 117 L.Ed.2d 504 (1992), the United States Court of Appeals for the Tenth Circuit was presented, as we are here, with a claim of vindictive prosecution based on the timing of the charges. In that case, Miller's criminal prosecution for filing false income tax refunds followed his filing of a civil lawsuit against the Treasury Department, his former employer, and the court addressed the issue whether the timing alone created a pre-

sumption of vindictiveness on the part of the prosecution. In rejecting that claim, the court noted that, generally, there is no such presumption in the context of pretrial prosecutorial decisions. *Id.* at 633. Indeed, the court recognized that, as a policy matter, "a presumption of vindictiveness based on timing alone" would be "unsound as it could easily be abused." *Id.* at 634. The court stated:

Adopting such a presumption would give sophisticated criminal suspects an opportunity to file civil charges against the government prior to an impending indictment, thus creating a presumption that the eventual charges were brought vindictively. Without more evidence to support an allegation of vindictiveness, almost every suspect in any legitimate prosecution could threaten to use such a judicially-created presumption.

*Id.*

The court recognized that, even absent a presumption of vindictiveness, a defendant might prove objectively that a prosecutor's charging decision was improperly motivated as punishment for exercising a legal right. *Id.* at 634. In that case, however, there was "no evidence other than the temporal sequence of events to support the bald assertion of prosecutorial vindictiveness." Accordingly, the court upheld the trial court's ruling denying Miller's motion to dismiss for vindictive prosecution. *Id.*

Here, the question is whether the circuit court erred in denying the motion to dismiss without an evidentiary hearing on appellant's claim of vindictive prosecution. In *McNeil,* this Court addressed a similar issue. In that case, the question was whether McNeil was entitled to a hearing on his claim for prosecutorial misconduct due to the State's alleged failure to act in good faith in pursuing an interlocutory appeal of the circuit court's ruling granting his motion to suppress his confession.[5] 112 Md.App. at 441, 462, 685 A.2d 839.

---

**5.** On the date the case was scheduled for trial, the State noted an interlocutory appeal from the circuit court's suppression order, and

We explained when a hearing is required for a claim of prosecutorial misconduct as follows:

> [A] defendant is entitled to a hearing, if timely requested, to prove or dispel his claim of misconduct if he proffers *verifiable facts* amounting to "some evidence tending to show the existence of" the State's bad faith. A mere general allegation of prosecutorial misconduct is not sufficient to warrant the granting of an evidentiary hearing, however. We also caution that such an evidentiary hearing is not a discovery device. Indeed, we share the concern of the Seventh Circuit that "the prospect of government prosecutors being called to the stand by every criminal defendant for cross-examination as to their motives ... is to be avoided."

*Id.* at 465, 685 A.2d 839 (quoting *United States v. Falk,* 479 F.2d 616, 620 (7th Cir.1973)).[6]

Courts in other jurisdictions similarly have held that a conclusory allegation of improper motive on the part of the State is insufficient to entitle a defendant to an evidentiary

---

moved to continue the trial date. *McNeil,* 112 Md.App. at 442, 685 A.2d 839. In filing the appeal, the State certified that the confession was material to the case, and the appeal was not being taken for purposes of delay. *Id.* The court granted the continuance, and on the next trial date, the State withdrew its appeal and stated that it was ready to proceed to trial. *Id.* at 443–44, 685 A.2d 839. McNeil objected to the State's withdrawal and contended that the appeal had been taken in bad faith. *Id.* at 444, 685 A.2d 839.

**6.** In *McNeil,* 112 Md.App. at 464, 685 A.2d 839, before setting forth the test to be applied for an evidentiary hearing, this Court referenced the Supreme Court's decision in *United States v. Armstrong,* 517 U.S. 456, 463, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), where the Supreme Court addressed the showing required in order to compel discovery for a selective prosecution claim. The Supreme Court noted that, because such a request "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy," the "justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." 517 U.S. at 468, 116 S.Ct. 1480. In *McNeil,* 112 Md.App. at 465, 685 A.2d 839, this Court noted that a similar standard should be used for evaluating a request for a hearing on a claim for prosecutorial misconduct.

hearing. *See United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir.2003) (to obtain an evidentiary hearing on a vindictive prosecution claim, the defendant must " 'affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus' ") (quoting *United States v. Bullis*, 77 F.3d 1553, 1559 (7th Cir.1996)); *United States v. Dean*, 119 F.Supp.2d 81, 84 (D.Conn.2000) (defendant's " 'showing' of vindictive prosecution [did] not rise above the level of mere allegations and conjecture drawn from the sequence of events leading to [the] indictment," and absent some evidence of actual animus, the defendant was not entitled to an evidentiary hearing); *People v. Peterson*, 397 Ill.App.3d 1048, 338 Ill.Dec. 30, 923 N.E.2d 890, 896 (a defendant is entitled to a hearing on a selective or vindictive prosecution claim only if he offers " 'sufficient evidence to raise a reasonable doubt that the government acted properly in seeking [to prosecute].' "), *appeal denied*, 236 Ill.2d 568, 342 Ill.Dec. 574, 932 N.E.2d 1035 (2010).

In *McNeil*, we held that McNeil was entitled to a hearing where "at least some of the allegations were readily verifiable by review of the court file." 112 Md.App. at 466, 685 A.2d 839. The verifiable facts that supported his position that the State had taken its appeal in bad faith in order to gather evidence against him and delay his trial included: (1) the State never paid the filing fee for the appeal; (2) only days after filing the appeal, the State had issued trial subpoenas; (3) when the State took its appeal based on the motion to suppress, it certified that the suppressed evidence was substantial proof of a material fact, but it later decided to proceed to trial without the evidence; and (4) the State did not notify McNeil of its intent to dismiss the appeal, even though the State obviously intended to go forward with the trial, as it had witnesses ready. *Id.* Based on these specific, verifiable factual allegations, we held that McNeil had provided "some evidence tending to show the existence" of prosecutorial misconduct, and we remanded the case for a hearing. *Id.* at 464–67, 685 A.2d 839.

■ Here, appellant did not meet this standard. He pro-
vided the circuit court with no evidence of actual vindictive-
ness, nor did he provide verifiable facts supporting his claim of
vindictive prosecution. Rather, appellant's allegation is based
solely on the fact that charges against him were refiled after
he filed a civil suit against the officers. A claim of vindictive
prosecution based solely on the timing of the filing of the
charges, without some evidence of actual bad faith, does not
rise beyond the level of mere conjecture. Appellant's asser-
tion was insufficient to entitle him to a hearing, and the circuit
court properly denied appellant's motion to dismiss, without a
hearing.

## II.

### Bill of Particulars

Appellant's second contention is that the circuit court erred
in failing to dismiss the charges against him because the State
did not provide him with a bill of particulars. He asserts that,
because he was charged with the statutory short form indict-
ment, he was entitled to a bill of particulars, and the State's
failure to provide it requires the reversal of his conviction and
"a remand to the trial court, with instructions to enter an
order dismissing the instant charges."

The State contends that it "responded to the request for
particulars by pointing out that it had provided the informa-
tion requested in discovery." Accordingly, it argues, the
circuit court properly exercised its discretion in finding that
the State had adequately responded to appellant's request for
a bill of particulars.

### A.

### Proceedings Below

On August 12, 2010, a Statement of Charges was filed
against appellant. With respect to the charge of second
degree assault, the Statement of Charges set forth the loca-
tion and date where the alleged second degree assault oc-

curred. The Application for Statement of Charges detailed the events supporting the charges, and, in pertinent part, stated:

> ... This investigator responded to the 3200 block of Brinkley Road Temple Hills, Prince George's County, Maryland for a shooting. Upon arrival it was discovered that at approximately 0109 hrs. [appellant] was driving his vehicle at an unreasonable speed through a crowded parking lot, directly towards Prince George's County Sheriff's Deputy First Class A. Lide # 394. Deputy Lide [ ] then fired his departmentally issued firearm at the vehicle striking [appellant] in the legs.
>
> A witness on the scene, Lorenzo Moore, stated that he saw Deputy Lide [ ] and Deputy E. Moore # 252, both of whom were wearing their Prince George's County Sheriff's Department Uniform, breaking up a fight between numerous people in the parking lot of the Club Elite (3200 block of Brinkley Road Temple Hills, Maryland). While the deputies were attempting to stop the assault[,] a 2006 blue Cadillac STS bearing a DC tag (BZ9389) driven by [appellant] traveled towards the direction of Deputy Lide [ ]. The witness further stated that the Cadillac veered towards Deputy Lide [ ]. Deputy Lide [ ] attempted to move out of its way, but it looked as if the vehicle was trying to strike him. Deputy Lide [ ] and Deputy Moore [ ] then drew their firearms and fired at the blue Cadillac. [Appellant] then attempted to flee the scene by backing up at a high rate of speed. [Appellant] then surrendered a few hundred feet away. The witness, Lorenzo Moore also stated that there were approximately 150 people in the parking lot of the Club Elite two of whom [appellant] struck with the Cadillac while driving towards Deputy Lide [ ].
>
> The witness further stated that [appellant's] vehicle was the only vehicle moving through the parking lot . . . .

On May 9, 2011, appellant filed a Demand for Bill of Particulars, pursuant to Maryland Rule 4–241(a). In his demand, he requested that the State provide additional information about the charge, including "the date and approximate

time" of the acts allegedly committed, the exact location where each act occurred, whether the victim consented to the acts alleged, as well as all facts relating to each element of the charge, including all facts showing appellant's intent to act.

On July 8, 2011, the State responded to appellant's demand, stating that: (1) the indictment was sufficient on its face to appraise appellant of the nature of charges against him; (2) the information requested was provided through discovery; (3) Rule 4–241 "does not require the State to particularize all the evidence it may offer" or inform appellant of the legal theories under which it intends to proceed; and (4) "because the State has already provided the applicable information . . . no further particulars are warranted."

On July 11, 2011, appellant moved to dismiss the charges against him. He argued that he was entitled to a bill of particulars, and his failure to receive it was structural error. Appellant contended that, "because the State has refused to file a bill of particulars to which [appellant] is statutorily entitled," dismissal of the second degree assault charges was required.

The State asserted that it had filed a response to appellant's bill of particulars. It explained to the court that it had declined to comply with appellant's demand because "[a]ll that [appellant] asked for in the bill of particulars was the statement of facts," and it argued that, because it had already provided appellant with over sixty pages of discovery and the charging document was sufficient to appraise appellant of the charges against him, further response was not necessary. The court denied the motion to dismiss, stating that the prosecutor had "provided enough information . . . to comply with the rule."

### B.

### Analysis

"The purpose of a bill of particulars is to guard against the taking of an accused by surprise by limiting the

scope of the proof." *McMorris v. State,* 277 Md. 62, 70 n. 4, 355 A.2d 438 (1976). Rule 4–241 states that "the defendant may file a demand in circuit court for a bill of particulars," and "[w]ithin ten days after service of the demand, the State shall file a bill of particulars that furnishes the particulars sought or it shall state the reason for its refusal to comply with the demand." Where the State refuses to comply with a defendant's request for a bill of particulars, the defendant may except to the State's refusal within ten days, pursuant to Md. Rule 4–241(c).[7] Rule 4–241, however, does not set forth sanctions for the State's refusal to comply with the defendant's request, and accordingly, whether to compel a response to the defendant's request is left to the discretion of the trial judge. *See Patrick v. State,* 90 Md.App. 475, 503 n. 20, 601 A.2d 1133 (Rule 4–241 "has no provision for sanctions," and therefore, "[t]he situation is left to the discretion of the trial judge."), *remanded on other grounds,* 329 Md. 24, 617 A.2d 215 (1992).

In addition to Rule 4–241(b), Md.Code (2010 Supp.) § 3–206(b) of the Criminal Law Article ("CL") specifically provides that, where the general statutory form of charging document is used to charge the crime of assault in the second degree, "the defendant, on timely demand, is entitled to a bill of particulars."[8] Statutory language to this effect has been construed as creating a statutory right. *See State v. Mulkey,* 316 Md. 475, 489, 560 A.2d 24 (1989) (statutory language stating that "the defendant is entitled to a bill of particulars"

---

7. Md. Rule. 4–241(c) provides as follows:

(c) **Exceptions to response.** The defendant may file exceptions to the sufficiency of the bill of particulars or to any refusal or failure to comply with the demand. The exceptions shall be filed within ten days after service of the response to the demand or, if no response is filed, within ten days after the time within which a response should have been filed. The circuit court may rule on the exceptions without a hearing.

8. Pursuant to CL § 3–206(a), the general form of a charging document for second degree assault is as follows: (name of defendant) on (date) in (county) assaulted (name of victim) in the second degree in violation of (section violated) against the peace, government, and dignity of the State.

is an indication of "a mandatory, unqualified intent" on the part of the legislature); *Patrick,* 90 Md.App. at 500–01, 601 A.2d 1133 (statutory language that "the defendant is entitled to a bill of particulars specifically setting forth the allegations against him" created a statutory right).

Here, the Statement of Charges filed against appellant used the statutory short form for second-degree assault. Accordingly, based on the plain language of CL § 3–206(b), appellant "was entitled to a bill of particulars."

In response to appellant's motion, the State indicated that it had filed a response to the request for a bill of particulars, asserting that "everything [appellant] seeks is in discovery." The court found that the prosecutor "provided enough information ... to comply with the rule," and it denied the motion to dismiss.

The Court of Appeals has indicated that, although open file discovery reduces the need for a bill of particulars, where such a bill is requested, the court ordinarily should grant the request. *Jones v. State,* 303 Md. 323, 340–41, 493 A.2d 1062 (1985) (where a bill of particulars was requested, "even though open file discovery is permitted and completed, the trial judge ... should grant the request."). Nevertheless, where open file discovery is provided, prejudice from the failure to specifically respond to a request for a bill of particulars is unlikely. *Id.* at 341, 493 A.2d 1062 (it was "likely that the open file discovery permitted Jones to accomplish the same practical end as a bill of particulars").

In *Grant v. State,* 55 Md.App. 1, 32–33, 461 A.2d 524 (1983), *cert. dis'd,* 299 Md. 309, 473 A.2d 455 (1984), this Court held that, although there was a technical failure of the State in failing to provide an explicit response to a request for a bill of particulars, where the State advised that it had provided its files to the defense, giving counsel the benefit of any facts it intended to pursue, and where no surprise at trial was shown, the trial court did not abuse its discretion in refusing to require further response from the State. This Court further stated that, given the lack of prejudice, any claim that appel-

lant's convictions should be reversed based on the State's technical failure to "R.S.V.P." in "a more formal fashion than it did" was absurd. *Id.* at 33, 461 A.2d 524.

A similar analysis applies here. Although the State technically should have provided appellant with a bill of particulars, the information essentially was provided in open file discovery. The State provided appellant with 60 pages of discovery, which included a list of witnesses, the statement of charges, and statements of each witness it planned to call. In light of the information the State provided to appellant in the charging document, the Application for Charges, and through discovery, and where there has been no showing of any surprise to the appellant regarding the evidence offered by the State, the circuit court did not abuse its discretion in denying appellant's motion to dismiss the charges against him.

## III.

### Sufficiency of the Evidence

Appellant contends that the circuit court erred in denying his motion for judgment of acquittal, made at the end of the State's case, and again at the conclusion of all the evidence. He argues that there was insufficient evidence to support his conviction of second degree assault, arguing that there was no evidence that he acted purposefully or recklessly. He alleges that "[t]he evidence, taken in the light most favorable to the State, shows that [he] drove a vehicle in a parking lot, and collided, at very low speed, with one Officer Lide."

The State notes that appellant was convicted of the battery variety of second degree assault, and it argues that "there was sufficient evidence that [appellant] committed either an intentional or reckless battery." Specifically, the State alleges that the testimony of Deputy Lide and Deputy Moore provided the jury with evidence from which it could reasonably conclude that appellant "caused offensive contact with, or harmful contact to, Deputy Lide as the result of an intentional or reckless act, without Deputy Lide's consent and without legal justification."

We review "an issue regarding the sufficiency of the evidence in a criminal trial by determining 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Titus v. State*, 423 Md. 548, 557, 32 A.3d 44 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The "fact-finder is free to believe part of a witness's testimony, disbelieve other parts of a witness's testimony, or to completely discount a witness's testimony." *Pryor v. State*, 195 Md.App. 311, 329, 6 A.3d 343 (2010). "We 'must give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether [the appellate court] would have chosen a different reasonable inference.' " *Cox v. State*, 421 Md. 630, 657, 28 A.3d 687 (2011) (quoting *Bible v. State*, 411 Md. 138, 156, 982 A.2d 348 (2009)).

Assault is defined as "the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings." CL at 3–201(b). "There are three forms of assault: the intent to frighten, an attempted battery, and a battery." *Pryor*, 195 Md.App. at 335, 6 A.3d 343.

Both appellant and the State agree that appellant's assault conviction was based on a battery. "Under Maryland common law, an assault of the battery variety is committed by causing offensive physical contact with another person." *Nicolas v. State*, 426 Md. 385, 406–07, 44 A.3d 396 (2012). The battery form of second degree assault requires: "(1) that the defendant caused offensive physical contact with the victim; (2) that the contact was the result of an intentional or reckless act of the defendant and was not accidental; and (3) that the contact was not consented or legally justified." *Pryor*, 195 Md.App. at 335, 6 A.3d 343.

Here, appellant does not contest that there was evidence to support a finding that he caused harmful or offensive contact with Deputy Lide and that such contact was not consensual. *Pryor*, 195 Md.App. at 335, 6 A.3d 343. Rather, his argument is based on the second element; he asserts that the evidence

failed "to demonstrate any mens rea, as it fails to demonstrate that the [a]ppellant acted purposely, or knowingly."

"A criminal battery may be intentional or unintentional; there are two methods of proving the commission of the crime." *Elias v. State*, 339 Md. 169, 183, 661 A.2d 702 (1995). An intentional battery requires "proof that the perpetrator intended to cause harmful or offensive contact against a person without that person's consent and without legal justification." *Id.* at 183–84, 661 A.2d 702. A reckless battery contains the same elements, but instead of proof of intent, there must be proof that the perpetrator's " 'misconduct, viewed objectively, was so reckless as to constitute a gross departure from the standard of conduct a law-abiding person would observe.' " *Id.* at 184, 661 A.2d 702 (quoting *Minor v. State*, 326 Md. 436, 443, 605 A.2d 138 (1992)).

Appellant asserts that there was no evidence that he acted purposefully or recklessly. He argues, instead, that his conduct was akin to ordinary negligence. In support of this contention, he asserts that "[n]o witness testified to any speed at which [he] drove his vehicle," and that the evidence presented was "consistent with a low-speed collision while the vehicle was decelerating."

This argument, however, is inconsistent with the testimony presented by Deputy Lide and Deputy Moore. Deputy Lide testified that, before appellant's car hit him, he heard the sound of a car's engine revving, "getting louder and louder and ... coming faster." Deputy Moore testified that she saw appellant's car "coming really fast" as the crowd of people gathered in the parking lot attempted to move out of the way of the car. Mr. Eaton, one of appellant's witnesses, testified that he saw appellant's car "bobbing and weaving" through a crowd of people. And appellant himself testified that he had to swerve to avoid hitting a young woman who was near his car. This evidence supported a finding that appellant caused offensive contact to Deputy Lide as a result of an intentional or reckless act, without Deputy Lide's consent. It was suffi-

cient to allow a rational trier of fact to convict appellant of second degree assault.

## IV.

### Jury Instructions on Second Degree Assault

At the conclusion of the evidence, appellant requested that the court instruct the jury using the second degree assault instruction that he submitted, which did "not include the word 'Reckless.'" The court stated that it was going to use the instructions given at the earlier trial, indicating that the instruction that appellant "gave me today is what I gave last" time. The instruction that the court gave, however, was as follows:

> Now, the charge in this case is Second Degree Assault. Second Degree Assault is causing effective physical contact to another person. In order ... to convict the defendant of assault, the State must prove beyond a reasonable doubt that the defendant caused offensive physical contact with or physical harm to [Deputy] Lide, that the contact was the result of an intention[al] or reckless act of the defendant and was not accidental, and that the contact was not consented to by [Deputy] Lide or not legally justified.

Appellant argues that the circuit court erred in giving this instruction. He contends that the court should have instructed the jury that it must find that his conduct was intentional. He asserts that the instruction given, including a reference to both intentional and reckless conduct, was improper because it was duplicitous, it deprived him of due process and the right to a unanimous verdict, it "raised the spectre of double jeopardy," and it allowed the presentation of "inconsistent theories," which had a "confusing effect upon the jury."

The State argues that appellant's argument is not preserved for appellate review. In any event, it argues, the instruction given by the trial court was not erroneous.

We first address the State's contention that appellant's argument is not preserved. The State makes two arguments

in this regard. First, it asserts that, although appellant requested that the court give an instruction that deleted any reference to a reckless act, he did not object after the court instructed the jury. Second, the State argues that appellant never raised in the circuit court the specific arguments listed above.

Rule 4–325(e) provides that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly *after the court instructs the jury,* stating distinctly the matter to which the party objects and the grounds of the objection." (Emphasis added). "A principal purpose of Rule 4–325(e) 'is to give the trial court an opportunity. to correct an inadequate instruction' before the jury begins deliberations." *Alston v. State,* 414 Md. 92, 112, 994 A.2d 896 (2010) (quoting *Bowman v. State,* 337 Md. 65, 69, 650 A.2d 954 (1994)). With respect to the Rule's requirement that an objection be made after the instructions are given, even if an objection was previously made, the Court of Appeals has explained that

> [t]here are good reasons for requiring an objection at the conclusion of the instructions even though the party had previously made a request. If the omission is brought to the trial court's attention by an objection, the court is given an opportunity to amend or correct its charge. Moreover, a party initially requesting a particular instruction may be entirely satisfied with the instructions as actually given.

*Johnson v. State,* 310 Md. 681, 686, 531 A.2d 675 (1987).

Here, appellant did not object to the second degree assault instruction after it was given to the jury, as required by Rule 4–325(e). He argues, however, that because he noted an exception to the instruction before it was given, his argument is still preserved. We are not convinced.

To be sure, there are circumstances where, even though there is not strict compliance with Rule 4–325(e), an argument is preserved because there was "substantial compliance" with the rule. *Bowman v. State,* 337 Md. 65, 69, 650

A.2d 954 (1994). The following requirements, however, must be met in order to show substantial compliance with the rule:

There must be an objection to the instruction; the objection must appear on the record; the objection must be accompanied by a definite statement of the ground for objection unless the ground for objection is apparent from the record[,] and the circumstances must be such that a renewal of the objection after the court instructs the jury would be futile or useless.

*Id.* (quoting *Gore v. State*, 309 Md. 203, 209, 522 A.2d 1338 (1987)).

Here, prior to the court's instructions to the jury, the following occurred regarding the second degree assault instruction:

[DEFENSE COUNSEL]: ... Does Your Honor want to discuss instructions?

THE COURT: No. I have them already, the last trial.

[DEFENSE COUNSEL]: All right. Then if Your Honor is about to give instructions, then I want to make sure that you're going to use the assault instruction that I submitted to Your Honor.

THE COURT: Yeah. That's the one I used the last time.

[PROSECUTOR]: Is it the one that includes intentionally or recklessly?

THE COURT: It's the one that he had asked me for.

[DEFENSE COUNSEL]: Okay. Thank you.

[PROSECUTOR]: The one that I want—it's a different one.

[DEFENSE COUNSEL]: The one that I want is the one I gave you today.

THE COURT: What did you ask for?

[DEFENSE COUNSEL]: It's different because it does not include—

THE COURT: How is it different?

[DEFENSE COUNSEL]: No, no. The one that I gave you today does not include the word, "Reckless."

[PROSECUTOR]: But that comes straight out of the book.

[DEFENSE COUNSEL]: It does, but I don't want it in there.

THE COURT: [Defense Counsel]—

[DEFENSE COUNSEL]: Yes.

THE COURT:—what you gave me today is what I gave last trial.

[DEFENSE COUNSEL]: All right. Please note my exception. Thank you.

THE COURT: I am noting your exception now. Okay.

This colloquy does not constitute substantial compliance with Rule 4–325(a). Initially, counsel did not state his reasons for his objection to including the word reckless in the second degree assault instruction. Moreover, as the State notes, there seemed to be some confusion on the part of the circuit court regarding whether it was giving the instruction that appellant requested. Under these circumstances, we cannot find that renewal of the objection after the court instructed the jury would have been futile or useless.

 Additionally, as the State notes, appellant is raising arguments on appeal that were never raised in the circuit court. Maryland Rule 8–131(a) provides that, "[o]rdinarily, the appellate court will not decide any . . . issue unless it plainly appears by the record to have been raised in or decided by the trial court." As we recently explained:

> The purpose of this preservation rule is " 'to ensure fairness for all parties in a case and to promote the orderly administration of law.' " *Robinson v. State,* 410 Md. 91, 103 [976 A.2d 1072] (2009) (quoting *State v. Bell,* 334 Md. 178, 189 [638 A.2d 107] (1994)). "Fairness and the orderly administration of justice is advanced 'by requiring counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings.' " *Id.*

*Dionas v. State,* 199 Md.App. 483, 523, 23 A.3d 277 *cert. granted,* 422 Md. 352, 30 A.3d 193 (2011). In accordance with these principles, we held in *Dionas* that, where the objection

to the jury instructions in the circuit court was on grounds other than that raised on appeal, the appellate contentions were not preserved for review. *Id.* at 524, 23 A.3d 277.

In this case, appellant's objection in the circuit court was merely that he did not want the second degree assault instruction to include the word reckless, with no explanation of the basis for that objection.[9] On appeal, however, appellant sets forth several arguments why the second degree assault instruction given by the trial court was in error, asserting that, because "[t]he instruction given by the trial court included a reference to both intentional and reckless conduct, it was "duplicitous," and it "impaired [his] right to a unanimous verdict," "deprived [him] of due process," and "raised the spectre of double jeopardy." Because these arguments were not raised below, they are not preserved for appellate review.

▬▬ Appellant argues, however, that we should review this claim for plain error. In *Kelly v. State,* 195 Md.App. 403, 6, A.3d 396 (2010), *cert. denied,* 417 Md. 502, 10 A.3d 1181 *cert. denied,* —— U.S. ——, 131 S.Ct. 2119, 179 L.Ed.2d 912 (2011), this Court recognized that we have discretion under Md. Rule 8–131(a) to address an unpreserved issue. We noted, however, that

> [i]t is a discretion that appellate courts should rarely exercise, as considerations of both fairness and judicial efficiency ordinarily require that all challenges that a party desires to make to a trial court's ruling, action, or conduct be presented in the first instance to the trial court so that (1) a proper record can be made with respect to the challenge, and (2) the other parties and the trial judge are given an opportunity to consider and respond to the challenge.

*Id.* at 431, 6 A.3d 396 (citations and quotations omitted).

We further stated:

---

9. After stating only that he wanted an instruction that did not include the word reckless, and after acknowledging that an instruction including the word reckless came "straight out of the book," he stated: "I don't want it in there."

"Plain error is 'error which vitally affects a defendant's right to a fair and impartial trial.'" Appellate courts will exercise their discretion to review an unpreserved error under the plain error doctrine "only when the 'unobjected to error [is] compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.'" "[A]ppellate review under the plain error doctrine '1) always has been, 2) still is, and 3) will continue to be a rare, rare phenomenon.'"

*Id.* at 431–32, 6 A.3d 396 (citations omitted).

We noted that the Court of Appeals had recently discussed the concept of plain error review, explaining:

"[P]lain-error review"—involves four steps, or prongs. First, there must be an error or defect—some sort of "[d]eviation from a legal rule"—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the district court proceedings." Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Meeting all four prongs is difficult, "as it should be."

*Id.* at 432, 6 A.3d 396 (quoting *State v. Rich,* 415 Md. 567, 578, 3 A.3d 1210 (2010)).

▆▆▆ Appellant has not convinced us to exercise our discretion to engage in plain error review in this case. The instruction given by the circuit court mirrored the pattern jury instruction for second degree assault. *See Maryland Criminal Pattern Jury Instructions,* MPJI–Cr 4:01C Second Degree Assault—Battery (1997).[10] As we recently noted, "[t]his

---

**10.** *Maryland Criminal Pattern Jury Instructions,* MPJI–Cr 4:01C Second Degree Assault—Battery, the pattern jury instruction in effect at the time of appellant's trial, provides:

Court has recommended that trial judges use the pattern instructions," and the "use of a pattern instruction, without objection, weighs heavily against plain error review of the instructions given." *Yates v. State*, 202 Md.App. 700, 723–24, 33 A.3d 1071 (2011), *aff'd*, 429 Md. 112, 55 A.3d 25 (2012). We decline to exercise our discretion in this case to engage in plain error review of the instruction on second degree assault.

## V.

### Jury Instruction for Defense of Others

Appellant requested that the court give the following instruction to the jury on "Defense of Others":

You have heard evidence that the defendant acted in defense of another. This [is] a defense and you are required to find the defendant not guilty if all of the following three factors are present:

1) the defendant actually believed that another person was in immediate and imminent danger of bodily harm;

2) the defendant's belief was reasonable; and

3) the defendant used no more force than was reasonably necessary to defend that other person in light of the threatened or actual harm.

Deadly force is that amount of force reasonably calculated to cause death or serious bodily harm. If you find that the defendant used deadly force, you must decide whether the use of deadly force was reasonable. Deadly force is reasonable if the defendant actually had a reasonable belief that

---

Assault is causing offensive physical contact to another person. In order to convict the defendant of assault, the State must prove: (1) that the defendant caused [offensive physical contact with] [physical harm to] (*victim*); (2) that the contact was the result of an intentional or reckless act of the defendant and was not accidental; and (3) that the contact was not consented to by (*victim*) [or not legally justified].
As the State notes in their brief, this instruction remains substantively the same in the new edition of the pattern instructions, MPJI–Cr 4:01C Second Degree Assault—Battery (2012).

the aggressor's force was or would be deadly and that the defendant needed a deadly force response.

In order to convict the defendant, the State must prove that defense of others does not apply in this case. The State must prove, beyond a reasonable doubt, that at least one of the three factors previously stated was absent, that is, that the defendant did not actually believe that another person was in immediate and imminent danger of bodily harm or that the defendant's belief was not reasonable or that the defendant used more force than was reasonably necessary to defend the other person.

The court denied his request.

Appellant contends that the circuit court abused its discretion when it refused to instruct the jury on the defense of others. He argues that he acted in defense of his friend, Mr. Fields, and that any force "exerted upon the alleged victim, may have been, in the eyes of the jury, reasonably necessary."

The State argues that the circuit court properly declined to give the requested instruction. It asserts that the evidence did not generate a defense of others instruction, noting that appellant's "defense at trial was not that it was necessary to assault Deputy Lide in order to defend his friend."

▌ Maryland Rule 4–325(c) provides that the trial court must, upon the request of any party, instruct the jury regarding the applicable law. *Tucker v. State*, 407 Md. 368, 379, 965 A.2d 900 (2009). When a defendant asserts an affirmative defense, the defendant need only show " 'some evidence' that supports the requested instruction." *Bazzle v. State*, 426 Md. 541, 551, 45 A.3d 166 (2012). "The source of the evidence is immaterial; it may emanate solely from the defendant." *Dykes v. State*, 319 Md. 206, 217, 571 A.2d 1251 (1990). "There must be some evidence to support *each element* of the defense however." *McMillan v. State*, 428 Md. 333, 355, 51 A.3d 623 (2012) (emphasis added).

With respect to a claim of defense of others, specific to second degree assault, we have stated:

Defense of another is a recognized response to a second degree assault charge if: (1) the defendant actually believed that the person defended was in immediate and imminent danger of death or serious bodily harm; (2) the defendant's belief was reasonable; (3) the defendant used no more force than was reasonably necessary to defend the person defended in light of the threatened or actual force; and (4) the defendant's purpose in using force was to aid the person defended.

*Choi v. State,* 134 Md.App. 311, 326, 759 A.2d 1156 (2000).

 Here, the evidence failed to generate a defense of others instruction. There was no evidence that appellant's act of hitting Deputy Lide was reasonably necessary to defend Mr. Fields. Indeed, appellant testified that he did not intend to assault Deputy Lide, and he did not even see him until right before the collision. The circuit court properly declined to give the requested instruction.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**