*Keisha Ann Hartman v. State of Maryland*, No. 15, September Term, 2016. Opinion by Hotten, J.

**CRIMINAL LAW — PLEA AGREEMENTS — STANDARD OF REVIEW**
Court of Appeals held that determining whether a plea agreement has been violated is a question of law that this Court reviews *de novo*.

**CRIMINAL LAW — REPRESENTATIONS, PROMISES, OR COERCION; PLEA BARGAINING**
Court of Appeals held that under contract principles governing plea agreements, a reasonable person in Petitioner's position would not understand that a plea agreement originating in a District Court proceeding would remain enforceable after Petitioner notes a *de novo* appeal to the circuit court under Maryland's two-tier trial system for minor offenses.

**CRIMINAL LAW — PRESERVATION — APPELLATE DISCRETION**
Court of Appeals held that Petitioner's claim regarding the due process concerns implicated by the enforcement of plea agreements was preserved for appellate review. The Court also held that under Maryland Rule 8-131(a), the Court retained discretion to consider Petitioner's unpreserved due process claim regarding prosecutorial vindictiveness because there was no unfair prejudice to the parties and because consideration of Petitioner's claim provides important guidance on the constitutionality of the prosecutor's conduct during plea bargaining in Maryland's two-tier trial system.

**CONSTITUTIONAL LAW — DUE PROCESS — PLEA AGREEMENTS — FAIRNESS AND ADEQUACY OF PROCEDURAL SAFEGUARDS**
Court of Appeals held that due process concerns of "fairness and adequacy of procedural safeguards" in this case do not override our conclusion that the original District Court plea agreement was inapplicable in the *de novo* circuit court proceeding because Petitioner did not detrimentally rely on the continued existence of the original plea agreement and the State's recommendation of a harsher sentence after Petitioner noted a *de novo* appeal did not unconstitutionally deter Petitioner from exercising her statutory right to appeal.

**CONSTITUTIONAL LAW — DUE PROCESS — PLEA NEGOTIATIONS — REALISTIC LIKELIHOOD OF VINDICTIVENESS**
Court of Appeals held that the State's conduct in making a new plea offer in the *de novo* proceeding that recommended a harsher sentence than what was offered in the District Court proceeding does not pose a "realistic likelihood of vindictiveness" because as the Supreme Court held in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663 (1978), "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so

long as the accused is free to accept or reject the prosecution's offer." *Id.* at 363, 98 S. Ct. at 668. Here, Petitioner was free to accept or reject the State's plea offer, and if she rejected it, the State bore the burden of proving beyond a reasonable doubt that Petitioner committed the alleged theft.

Circuit Court for Allegany County
Case No. 01-K-15-16567
Argued: October 7, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 15

September Term, 2016

_____

KEISHA ANN HARTMAN

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty

JJ.

_____

Opinion by Hotten, J.

_____

Filed: March 27, 2017

We consider whether a plea agreement entered into in the District Court of Maryland remains binding once a defendant files a *de novo* appeal to the circuit court, pursuant to Courts & Judicial Proceedings (Cts. & Jud. Proc.) §12-401.[1]  Keisha Ann Hartman

---

[1] Cts. & Jud. Proc. §12-401 states in relevant part:

\* \* \*

**Criminal cases**

(b) In a criminal case:

\* \* \*

    (2) The defendant may appeal even from a final judgment entered in the District Court though imposition or execution of sentence has been suspended.

\* \* \*

**Time for appeal**

(e)(1) Except as provided in paragraph (2) of this subsection, an appeal shall be taken by filing an order for appeal with the clerk of the District Court within 30 days from the date of the final judgment from which appealed.

    (2) If the final judgment was entered in a case filed under §8-332, §8-401, §8-402, §14-109, or §14-120 of the Real Property Article, the order for appeal shall be filed within the time prescribed by the particular section.

**Appeals heard on the record or tried de novo**

(f) In a civil case in which the amount in controversy exceeds $5,000 exclusive of interest, costs, and attorney's fees are recoverable by law or contract, in any matter arising under §4-401(7)(ii) of this article, and in any case in which the parties so agree, an appeal shall be heard on the record made in the District Court. In every other case, including a criminal case in which sentence has been imposed or suspended following a plea of nolo contendere or guilty … an appeal shall be tried de novo.

**Criminal appeals tried de novo**

(g) In a criminal appeal that is tried de novo:

    (1) There is no right to a jury trial unless the offense charged is subject to a penalty of imprisonment or unless there is a constitutional right to a

(continued . . .)

("Petitioner") pled guilty to a theft charge in the District Court in exchange for the State's recommendation that she receive no executed jail time. Both parties satisfied the terms of the plea agreement, but the District Court judge did not follow the State's recommendation, instead imposing a sentence of thirty days' incarceration. Thereafter, Petitioner filed a *de novo* appeal to the circuit court. Prior to the *de novo* proceeding, the State offered a new plea agreement whereby, in exchange for Petitioner's guilty plea, the State would recommend Petitioner receive thirty days' incarceration. Petitioner subsequently filed a Motion to Enforce the Plea Agreement that was presented to the circuit court. After a hearing, the circuit court denied Petitioner's motion.

For the reasons that follow, we shall affirm the judgment of the Circuit Court for Allegany County.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2014, Petitioner was observed stealing several t-shirts, hair color, and screen protectors, valued at approximately $82.51, from a Walmart in Allegany County. Petitioner was arrested and charged with theft under $100.

In the District Court, Petitioner and the State entered into a plea agreement whereby Petitioner agreed to plead guilty to theft, in exchange for the State's agreement to

(. . . continued)
jury trial for that offense; and

(2) On the filing of a notice of appeal, the circuit court may stay a sentence of imprisonment imposed by the District Court and release the defendant pending trial in the circuit court.

2

recommend no executed jail time. Both parties acknowledged that the plea agreement was not binding on the District Court. During the District Court proceeding, the District Court judge found Petitioner guilty. During the sentencing phase of the hearing, the State recommended Petitioner not serve any jail time. The State advised the court that in 2013, charges against Petitioner for theft and credit card fraud were placed on the stet docket; in 2011, charges for false imprisonment and disorderly conduct were also placed on the stet docket; and in 2007, bad check charges were also placed on the stet docket. Finally, the State indicated that in 2006, in West Virginia, Petitioner was convicted for writing a bad check and fraud. Petitioner's defense counsel noted that Petitioner paid $205 to Walmart after receiving a demand letter from Walmart's attorneys and that she was a single mother with three children. Petitioner testified that "[it was] just something that happened, [a] mistake." In response, the District Court judge remarked that Petitioner had "made a lot of mistakes[,]" and sentenced Petitioner to thirty days' incarceration. Thereafter, Petitioner noted a timely *de novo* appeal to the Circuit Court for Allegany County.

On June 2, 2015, Petitioner entered a plea of not guilty and requested a jury trial. The State subsequently offered Petitioner a new plea agreement whereby Petitioner would plead guilty in exchange for the State's recommendation of 30 days' incarceration. On July 2, 2015, Petitioner filed a Motion to Enforce the Plea Agreement in the circuit court, arguing the State violated the terms of the District Court plea agreement by altering its sentencing recommendation from no incarceration to thirty days' incarceration. During a hearing scheduled on July 28, 2015, Petitioner argued that the terms of the District Court plea agreement remained binding on the State during the *de novo* appeal to the circuit court.

3

In response, the State argued that since the trial was *de novo,* the circuit court considered the case anew, and therefore, no plea agreement existed between the parties. The circuit court agreed that on *de novo* appeal, the case began anew for both the prosecution and the defense, and that the District Court plea agreement was no longer enforceable.

Petitioner timely filed an interlocutory appeal to the Court of Special Appeals. Prior to briefing, the Court of Special Appeals *sua sponte* transferred the case to this Court, pursuant to Maryland Rule 8-132.[2]

Additional facts shall be provided, *infra,* to the extent they prove relevant in addressing the issues presented.

## STANDARD OF REVIEW

For questions of law, we "undertake an independent review of the legal correctness of the [c]ircuit [c]ourt's ruling, without according it any deference." *Oku v. State*, 433 Md. 582, 593, 72 A.3d 538, 544 (2013). Whether a plea agreement has been violated is a question of law which this Court reviews *de novo*. *Tweedy v. State*, 380 Md. 475, 482, 845 A.2d 1215, 1219 (2004).

---

[2] Maryland Rule 8-132 states,
[i]f the Court of Appeals or the Court of Special Appeals determines that an appellant has improperly noted an appeal to it but may be entitled to appeal to another court exercising appellate jurisdiction, the Court shall not dismiss the appeal but shall instead transfer the action to the court apparently having jurisdiction, upon the payment of costs provided in the order transferring the action.

4

Petitioner argues that the State violated the terms of the District Court plea agreement by offering a new plea in the *de novo* proceeding, whereby Petitioner would plead guilty in exchange for the State's recommendation of thirty days' incarceration, instead of no incarceration as the parties originally agreed.

## I.  Plea Agreements as Contracts

### a.  Reasonable Interpretation of Terms

This Court has repeatedly acknowledged that plea bargains are akin to contracts. *See, e.g.*, *Cuffley v. State*, 416 Md. 568, 579, 7 A.3d 557, 563 (2010) ("Plea bargains are likened to contracts.") (quoting *Tweedy*, 380 Md. at 482, 845 A.3d at 1219); *see also Solorzano v. State*, 397 Md. 661, 668, 919 A.2d 652, 668 (2007) ("Because plea bargains are similar to contracts ….").  In considering whether a plea agreement has been violated, appellate courts "construe the terms of the plea agreement according to the reasonable understanding of the defendant when he [or she] pled guilty."  *Solorzano*, 397 Md. at 668, 919 A.2d at 656 (citations omitted).  In *Cuffley*, we concluded that:

> [A]ny question that later arises concerning the meaning of the sentencing term of a binding plea agreement must be resolved by resort *solely* to the record established at the [Maryland] Rule 4-243 plea proceeding.  The record of that proceeding must be examined to ascertain precisely what was presented to the court, in the defendant's presence and before the court accepts the agreement, to determine what the defendant reasonably understood to be the sentence the parties negotiated and the court agreed to impose. The test for determining what the defendant reasonably understood at the time of the plea is an objective one. It depends not on what the defendant actually understood the agreement to mean, but rather, on what a reasonable lay person in the defendant's position and unaware of the niceties of sentencing law would have understood the agreement to mean, based on the record developed at the plea proceeding.

5

*Cuffley*, 416 Md. at 582, 7 A.3d at 565 (emphasis in original).

"[I]f examination of the terms of the plea agreement itself, by reference to what was presented on the record at the plea proceeding before the defendant pleads guilty, reveals what the defendant reasonably understood to be the terms of the agreement, then that determination governs the agreement." *Baines v. State*, 416 Md. 604, 615, 7 A.3d 578, 585 (2010). Further, "[i]f the record of the plea proceeding clearly discloses what the defendant reasonably understood to be the terms of the agreement, then the defendant is entitled to the benefit of the bargain, which, at the defendant's option, is either specific enforcement of the agreement or withdrawal of the plea." *Cuffley*, 416 Md. at 583, 7 A.3d at 566 (internal citations omitted). If the plea agreement is ambiguous then the ambiguity should be construed in favor of the defendant. *Solorzano*, 397 Md. at 673, 919 A.2d at 659.

Petitioner argues that the plea agreement neither limited the State's obligation to the District Court proceeding nor indicated that the State's obligation would cease if Petitioner noted an appeal. The State disagrees, and argues that because the plea agreement did not include a provision that the State would make the same no-jail recommendation on a *de novo* appeal, no reasonable person in Petitioner's position would interpret the agreement to apply in the circuit court proceeding.

The parties agree that the terms of the District Court plea agreement were simple: Petitioner would plead guilty to the crime of theft, and in exchange, the State would recommend she receive no jail time. Under *Cuffley*, however, our interpretation of the original plea agreement occurs within the context of the District Court proceeding, and we

6

must examine the record from the April 30, 2015 hearing, including "what was presented to the court, in the defendant's presence and before the court accepts the agreement, to determine what [Petitioner] reasonably understood to be the" terms of the plea. *See Cuffley*, 416 Md. at 582, 7 A.3d at 565. This review is an objective analysis based on the plea proceeding's record. *See id.* at 582, 7 A.2d at 565; *see also Baines*, 416 Md. at 615, 7 A.3d at 585.

The record reflects that at the commencement of the April 30, 2015 hearing, the State informed the District Court of the parties' intent to enter into a plea agreement with the previously referenced terms. After entering her guilty plea, Petitioner's counsel explained to Petitioner that:

> [DEFENSE COUNSEL]: If you want to, you can enter a plea of not guilty and have a trial. If you have a trial, you'd [sic] presumed innocent and the State would have the burden of trying to prove your guilt beyond a reasonable doubt. They would do that by calling witnesses and presenting evidence and testimony. If we went to trial, you would have an opportunity to present your case, to challenge the State's case, and you could call any witnesses you wished. If you wanted to, you could testify. You also have an option not to testify. If you remain silent, your silence would not be taken as a sign of guilt. Upon entering a guilty plea you're waiving these trial rights; do you understand that?
>
> [PETITIONER]: Yeah.
>
> [DEFENSE COUNSEL]: Do you understand the State is making a recommendation for not [sic] actual jail time in this matter, just a suspended sentence. But that's only a recommendation. The Judge can impose whatever penalty he feels is appropriate under the circumstances up [to] the maximum meaning 90 days in this case; do you understand that?
>
> [PETITIONER]: Yes.

7

The State then explained the underlying facts it would have presented had Petitioner pled not guilty and proceeded to trial. Once the State presented the facts, the District Court judge held that "[i]t will be a finding of guilty." At that point, the terms of the plea were satisfied and the agreement was complete.

We hold that, based on the above-referenced record, a reasonable person in Petitioner's position would not have expected the plea agreement to extend beyond the District Court proceeding. During defense counsel's colloquy with Petitioner, he explained what trial rights Petitioner was foregoing by pleading guilty, but provided no notice to Petitioner that her appellate rights remained intact or that an appeal of her conviction would result in a *de novo* proceeding. Absent any evidence in the record to the contrary, we conclude the plea agreement was limited to the District Court proceeding.

### b. *Oku v. State* as Precedent for Extending District Court Plea Agreement to *De Novo* Proceeding

#### i. Under *Oku*, *De Novo* Proceedings Are A "Do Over For Findings of Fact and Judgment of Guilt"

Petitioner quotes *Oku v. State* for the proposition that "[o]ur *de novo* trial system provides for what is essentially a 'do over' in terms of the findings of fact and judgment of guilt." *Oku*, 433 Md. at 595, 72 A.3d at 545. Petitioner argues that in *Oku* we rejected the notion that the nature of a *de novo* appeal either precluded the State from presenting the defendant's District Court trial testimony in the circuit court or eliminated what occurred in the District Court. Based on this interpretation of *Oku*, Petitioner argues that the original plea agreement did not expire when the *de novo* appeal was filed. The State disagrees, and argues that Petitioner ignores the fact that the judgment of guilt in the District Court rested

8

entirely on her guilty plea. The State contends that once Petitioner sought the *de novo* appeal of her conviction, the District Court plea agreement was also subject to a "do over."

We agree with the State's characterization of *Oku* and its applicability to this case. In *Oku*, we concluded that filing a *de novo* appeal from the District Court to the circuit court does not extinguish the District Court judgment. *See Oku*, 433 Md. at 592, 72 A.3d at 544. "Rather, 'the District Court's judgment remains in effect pending the appeal to the circuit court, unless and until superseded by a judgment of the circuit court or a disposition by *nolle prosequi* or stet.'" *Id.* (quoting *Stone v. State*, 344 Md. 97, 104, 685 A.2d 441, 444 (1996)).[3]

Additionally, we have interpreted *de novo* to mean "afresh" or "anew," and that a *de novo* trial affords a criminal defendant a "brand new bite at the apple[.]" *Id.* 433 Md. at 591, 72 A.3d at 543 (citations omitted). A *de novo* appeal to the circuit court is treated "as a wholly original proceeding as if the charges had not been heard before and no decision had been rendered." *Garrison v. State*, 350 Md. 128, 136, 711 A.2d 170, 173 (1998) (quoting *State v. Jefferson*, 319 Md. 674, 681, 574 A.2d 918, 921 (1990)). On *de novo* appeal, the circuit court "receive[s] evidence and make[s] determinations of facts as though no prior proceeding had occurred." *Oku*, 433 Md. at 592, 72 A.3d at 544 (quoting *In re Marcus, J.*, 405 Md. 221, 234-35, 950 A.2d 787 (2008). The parties to the *de novo* proceeding are neither limited by the evidence presented at the District Court trial nor

---

[3] Maryland Rule 7-112(b) mirrors the language in *Oku*. Specifically, Maryland Rule 7-112(b) states "[t]he District Court judgment shall remain in effect pending the appeal unless and until superseded by a judgment of the circuit court or, in a criminal action, a disposition by nolle prosequi or stet entered in the circuit court."

required to present the same evidence on appeal. *Id.* (citing *Garrison*, 350 Md. at 136, 711 A.2d at 174). Our holding in *Oku* does not, therefore, support the proposition that because the District Court judgment remains in effect, the factual and procedural underpinnings that led to the judgment – the plea agreement – also remain in effect on *de novo* appeal.

### ii. Effect of Petitioner's District Court Guilty Plea

Because we hold that the District Court plea agreement does not extend to the *de novo* proceeding, it is pertinent to clarify the impact Petitioner's guilty plea in the District Court may have in the *de novo* proceeding.

The facts in this case are similar to those in *Oku*. In *Oku*, we considered whether the *de novo* system contemplated by Cts. & Jud. Proc. §12-401(f) barred the State from using a criminal defendant's admission – made during the District Court trial – in the State's case during the subsequent *de novo* trial. *Oku*, 433 Md. at 593, 72 A.2d at 544. We emphasized in *Oku* "that a *de novo* appeal has the effect of ignoring the *judgment* below, but only for the limited purpose of granting a defendant, who was convicted upon trial in the District Court, a second trial." *Id.* at 594, 72 A.3d at 545 (emphasis in original). We concluded that "[a]t the second trial, no deference is accorded to the District Court's factual findings or legal conclusions." *Id.* at 594, 72 A.3d at 545. We also noted that the United States Supreme Court, in describing another state's two-tier trial system,[4] explained that in

---

[4] The Supreme Court's description of Kentucky's *de novo* trial system in *Colten v. Kentucky*, 407 U.S. 104, 112, 92 S. Ct. 1953, 1958 (1972), applies with equal force to Maryland's two-tier, *de novo* trial system established by Cts. & Jud. Proc. §12-401. *See*

(continued . . .)

a trial *de novo* the "[p]rosecution and defense begin anew" and "neither the judge nor jury determines guilt or fixes a penalty in the trial *de novo* is in any way bound by the [District Court's] *findings or judgment*." *Id.* at 595, 72 A.3d at 545 (quoting *Colten v. Kentucky*, 407 U.S. 104, 113, 92 S. Ct. 1953, 1958 (1972)). We concluded that a *de novo* trial "does not call for the exclusion of testimony voluntarily given in the District Court trial, as long as that testimony is admissible under our rules of evidence." *Oku*, 433 Md. at 595, 72 A.3d at 545.

We also noted that, in contrast to appeals from the District Court that are reviewed "on the record,"[5] there is a new fact finder in the *de novo* proceeding who owes no deference to the District Court's findings or conclusions. *Id.* at 595-96, 72 A.3d at 546. "Both parties are free to present new evidence or a new theory of the case[,]" and the circuit court "must decide the admissibility of the proffered evidence by resort to the applicable evidentiary rules." *Id.* We held:

> the factfinder at a trial *de novo* makes a fresh determination of the weight to be accorded to any evidence that is admitted. In short, applying the rules of evidence to [c]ircuit [c]ourt trials that are the result of a *de novo* appeal in the same manner as they are applied in a trial that originates in that court does

---

(. . . continued)
*Oku*, 433 Md. at 595, 72 A.2d at 545; *see also Colten v. Kentucky*, 407 U.S. 104, 112 fn. 4, 92 S. Ct. 1953, 1958 fn. 4 (1972) (recognizing the similarity between Kentucky and Maryland's two-tier trial system for adjudicating less serious criminal cases).

[5] In *Oku,* we stated that reviewing a District Court judgment "on the record" means the circuit court acts in an appellate role. *Oku*, 433 Md. at 595 fn. 9, 72 A.3d at 546 fn. 9 (citations omitted). The circuit court is thus "bound by the record below, and must consider the evidence adduced in the District Court trial 'in a light most favorable to the prevailing party' below." *Id.* Only if the District Court's findings are clearly erroneous, may the circuit court set them aside. *Id.*

11

not deprive a defendant of the second "bite at the apple" mandated by [Cts. & Jud. Proc.] §12-401, nor does it convert a trial *de novo* into a record appeal.

The *de novo* trial system in Maryland affords the defendant many benefits, for example, a quicker, less costly resolution of minor offenses, a chance to preview the State's case against him [or her] in District Court, and, if the defendant chooses to appeal, a second chance at acquittal. But the purpose and structure of our *de novo* system, as laid out in our statutes, rules, and caselaw, do not require the feature [p]etitioner seeks, that is, to have his [or her] District Court testimony ignored by the State during its case-in-chief in [c]ircuit [c]ourt.

*Id.* at 596, 72 A.3d at 546.

## II.     Due Process[6] Concerns in This Case

### a.  Preservation of Due Process Claims

Before addressing the merits of Petitioner's due process claims, we must first address the State's argument that those claims are not preserved for appellate review. First, the State argues that Petitioner did not preserve her argument that due process requires the plea agreement to be construed to extend to the circuit court. Specifically, the State avers that, in the circuit court, Petitioner only argued that under a plain contractual interpretation of the original plea agreement and under our holding in *Oku*, the State was obligated by the same plea terms that it agreed to in the District Court proceeding. The State acknowledges, and the record reflects, however, that Petitioner also argued in her Memorandum in Support of her Motion to Enforce the Plea Agreement that,

[u]nder due process, a criminal defendant has a constitutional right to some form of remedy for a broken agreement. (Santobello v. New York, [404 U.S. 257,] 257 [, 92 S. Ct. 495] (1971)). "When a plea rests in any significant

---

[6] The Due Process Clause of the Fourteenth Amendment states: "… nor shall any State deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, §1.

12

degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." [*Id.*]

Thus, Petitioner preserved her claim that due process requires the enforcement of the terms of a plea agreement agreed to by the parties. *See* Maryland Rule 8-131(a).

Second, the State argues that Petitioner never advanced a claim in the circuit court regarding her due process right to avoid prosecutorial vindictiveness in noting a *de novo* appeal. Petitioner instead first raised this issue in her brief to this Court. Petitioner argues – in her reply brief – that "[t]he due process concern discussed in [Petitioner's] brief is not a separate issue. It is merely one more reason why the plea agreement should be construed in the manner consistently advocated by [Petitioner]." We disagree.

Although Petitioner raised a due process claim before the circuit court, the claim advanced before this Court was outside the scope of the earlier claim. Petitioner's circuit court due process claim relied on the Supreme Court case *Santobello v. State*, where the Supreme Court held that when "a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262, 92 S. Ct. at 499. The *Santobello* Court concluded that if the defendant did not receive the benefit of his or her bargain, then he or she can either: (1) have the bargain specifically enforced, or (2) withdraw his or her plea of guilty. *Id.* at 263, 92 S. Ct. at 499. We subsequently relied on *Santobello* for the conclusion that "when either the prosecution breaches its promise with respect to a plea agreement, or the court breaches a plea agreement that it agreed to abide by, the defendant is entitled to relief[]" under the due process clause of the Fourteenth

13

Amendment. *See Solorzano*, 397 Md. at 667-68, 919 A.2d at 656 (citations omitted). Thus, the basis for Petitioner's due process claim in the circuit court was that a defendant has a due process right to enforce the terms of his or her plea agreement when the State or the trial court violates the terms of that agreement.

On appeal, Petitioner's due process claim instead relies on the Supreme Court case *Blackledge v. Perry*, 417 U.S. 21, 94 S. Ct. 2098 (1974). In *Blackledge*, the Supreme Court considered whether a felony indictment brought after the defendant exercised his statutory right to appeal constituted a penalty in contravention of the due process clause of the Fourteenth Amendment. *Blackledge*, 417 U.S. at 25, 94 S. Ct. at 2101. The Supreme Court held that,

> "since the fear of [] vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such retaliatory motivation on the part of the sentencing judge." [*North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S. Ct. 2072, 2080 (1969)[7]]. We think it [is]

---

[7] In *North Carolina v. Pearce*, the Supreme Court consolidated two cases whereby the defendant in each was convicted and sentenced in state court, but subsequently obtained postconviction relief and was retried, convicted a second time in state court, and sentenced to a harsher period of incarceration than the defendant had been sentenced originally. 395 U.S. at 713-15, 89 S. Ct. at 2074-75. The *Pearce* Court held that due process

> requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

395 U.S. at 725, 89 S. Ct. at 2080. The Court also held that for a judge to impose a more severe sentence on a defendant after a new trial, the judge must state reasons for the

(continued . . .)

clear that the same considerations apply here. A person convicted of an offense is entitled to pursue his statutory right to a trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration.

*Id.* at 28, 94 S. Ct. at 2102-03. Thus, Petitioner's due process claim before us is not based on enforcement of the plea agreement. Rather, Petitioner's claim is based on whether the State's action – recommending a harsher sentence after Petitioner exercised her statutory right to appeal – created a "fear of vindictiveness" that could deter defendants like Petitioner from exercising their statutory right to appeal in contravention of the due process clause of the Fourteenth Amendment. We conclude, therefore, that Petitioner's claim regarding her due process right to avoid prosecutorial vindictiveness in noting a *de novo* appeal was not preserved.

### b. Discretion Under Maryland Rule 8-131(a)

Maryland Rule 8-131(a) governs our scope of review in considering issues on appeal. Sub-section (a) states:

> The issues of jurisdiction of the trial court over the subject matter and, unless waived under [Maryland] Rule 2-322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

---

(. . . continued)
increased punishment. *Id.* at 726, 89 S. Ct. at 2081. *Pearce* was subsequently overturned by *Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201 (1989) (holding that no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial).

Maryland Rule 8-131(a).

We made clear in *State v. Bell*, 334 Md. 178, 638 A.2d 107 (1994) that our review of arguments not raised at the trial level is discretionary, not mandatory. *See Bell*, 334 Md. at 188, 638 A.2d at 113. We also noted that the primary purpose of Maryland Rule 8-131(a) is to "ensure fairness for all parties in a case and to promote the orderly administration of law." *Id.* at 189, 638 A.2d at 113 (quoting *Brice v. State*, 254 Md. 655, 661, 255 A.2d 28, 31 (1969)) (other citations omitted). In *Chaney v. State*, 397 Md. 460, 918 A.2d 506 (2007), we concluded that the discretion authorized by Maryland Rule 8-131(a)

> is a discretion that appellate courts should rarely exercise, as considerations of both fairness and judicial efficiency ordinarily require that all challenges that a party desires to make to a trial court's ruling, action, or conduct be presented in the first instance to the trial court so that (1) a proper record can be made with respect to the challenge, and (2) the other parties and the trial judge are given an opportunity to consider and respond to the challenge.

*Chaney*, 397 Md. at 468, 918 A.2d at 511. "We usually elect to review an unpreserved issue only after it has been thoroughly briefed and argued, and where a decision would[:] (1) help correct a recurring error, (2) provide guidance when there is likely to be a new trial, or (3) offer assistance if there is a subsequent collateral attack on the conviction." *Conyers v. State*, 354 Md. 132, 151, 729 A.2d 910, 920 (1999).

In *Jones v. State*, 379 Md. 704, 843 A.2d 778 (2004), we held that when presented with a plausible exercise of discretion under Maryland Rule 8-131(a), "appellate courts should make two determinations concerning the promotion or subversion of [Maryland Rule] 8-131(a)'s twin goals." *Jones*, 379 Md. at 714, 843 A.2d at 784. First, we consider

16

whether the exercise of discretion will work an unfair prejudice to either of the parties. *Id.*; *see also Ball*, 334 Md. at 189, 638 A.2d at 113 ("[D]iscretion should be exercised only when it is clear that it will not work an unfair prejudice to the parties or to the court." (citations and footnote omitted)). Part of our determination of whether unfair prejudice would exist is consideration of the rationale for the default or waiver and whether the failure to raise the issue was a considered, deliberate one, or whether it was inadvertent and unintentional. *Jones*, 379 Md. at 714, 843 A.2d at 784. Second, we consider whether the exercise of discretion will promote the orderly administration of justice. *Id.* at 715, 843 A.2d at 784. We noted that Maryland Rule 8-131(a) "seeks to prevent the trial of cases in a piecemeal fashion, thereby saving time and expense and accelerating the termination of litigation." *Id.*

In determining whether to consider the merits of this issue, our precedents recognize that constitutional issues raised for the first time on appeal, and not raised in the trial court, are not automatically entitled to consideration on the merits under Maryland Rule 8-131(a). *See, e.g., Oku*, 433 Md. at 588-89, 72 A.3d at 541-42 (declining to consider petitioner's Sixth Amendment and Fourteenth Amendment claim because petitioner failed to raise either issue in the trial court, and therefore did not properly preserve them for appellate review); *see also Balt. Teachers Union v. Bd. of Edu.*, 379 Md. 192, 205, 840 A.2d 728, 736 (2004) ("Since the constitutional issue raised in the [petitioner's] brief was not raised in the trial court, we shall decline to address it."). Our "established policy is to decide constitutional issues only when necessary." *Burch v. United Cable Television of Balt. Ltd. P'ship*, 391 Md. 687, 695, 895 A.2d 980, 984 (2006) (quoting *Mercy Hospital v. Jackson*,

17

306 Md. 556, 565, 510 A.2d 562, 566 (1986)); *see also Balt. Teachers Union*, 379 Md. at 205-06, 840 A.2d at 736 ("It is particularly important not to address a constitutional issue not raised in the trial court in light of the principle that a court will not unnecessarily decide a constitutional question.").

The State argues that Petitioner's failure to assert the prosecutorial vindictiveness due process claim in the circuit court created unfair prejudice for two reasons: (1) we do not have the benefit of the circuit court's consideration of this due process argument, and (2) had the circuit court concluded a presumption of vindictiveness should govern construction of the plea agreement, the State would have had an opportunity to present facts that refuted the presumption of vindictiveness. Petitioner notes in her reply brief that the State explained to the circuit court that its reasoning for offering a harsher sentence in the *de novo* proceeding was because the prosecutor saw no reason to deviate from the District Court's sentence. Petitioner also argues that the State's subjective reasons for recommending a harsher sentence after she noted her *de novo* appeal are of no consequence because, in her view, when a prosecutor recommends a harsher sentence after a defendant notes a *de novo* appeal, there is a presumption of vindictiveness that renders the prosecutor's subjective intent in recommending the harsher sentence irrelevant.

Since both parties briefed the issue before this Court and the trial record below is sufficient for us to consider the merits, we may consider Petitioner's prosecutorial vindictiveness due process claim, pursuant to Maryland Rule 8-131(a). Additionally, deciding this due process claim will promote the fair administration of justice because it will dispose of Petitioner's concerns regarding the State's conduct in this case.

18

Considering the merits of this issue will also provide important guidance regarding the constitutionality of prosecutorial conduct during plea bargaining in Maryland's two-tier trial system. *See Chaney*, 397 Md. at 468, 918 A.2d at 511 (considering petitioner's unpreserved challenge to a restitution order because it constituted plain error and the issue "transcends this case; it is one that may affect hundreds of cases that flow through our criminal and juvenile courts and that implicates important Constitutional and statutory rights, and guidance is needed." (footnote omitted)).

### c. Contract Principles and Concerns of "Fairness and Adequacy of Procedural Safeguards"[8]

In considering the enforcement of plea agreements, we have consistently held that in addition to considering contract principles, "[d]ue process concerns for fairness and the adequacy of procedural safeguards guide any interpretation of a court approved plea agreement." *See Cuffley*, 416 Md. at 580, 7 A.3d at 564 (quoting *Solorzano*, 397 Md. at 688, 919 A.2d at 656). Notably, in considering our jurisprudence in this area, however, the central issue was not whether the plea agreement itself existed, as is the case here, but rather a consideration of what the specific terms of the agreement were and whether those terms had been violated. *See, e.g., Cuffley*, 416 Md. at 573-75, 7 A.3d at 560 (considering whether a judge, who accepted plea on the record, could sentence defendant to fifteen years in prison, with all but six years suspended, when the terms of the plea stated defendant was to be sentenced "within the guidelines[,]" meaning sentenced to between four and six years

---

[8] *See Cuffley*, 416 Md. at 580, 7 A.3d at 564 (quoting *Solorzano*, 397 Md. at 688, 919 A.2d at 656).

of imprisonment); *see also Solorzano*, 397 Md. at 664-67, 919 A.2d at 654-55 (determining whether court violated terms of plea agreement when defendant pled guilty, and the State recommended he receive a sentence at the "top of the guidelines, which is believed to be twelve to twenty years," but after accepting the plea, the court sentenced defendant to life imprisonment with all but fifty years suspended).

Unlike the aforementioned cases, we must determine whether the plea agreement remains intact, and therefore enforceable, in a *de novo* circuit court proceeding. The Court of Special Appeals' decision in *Rios v. State*, 186 Md. App. 354, 974 A.2d 366 (2009) is instructive. In *Rios*, the Court of Special Appeals considered whether the parties had reached a plea agreement during plea negotiations.[9] In determining whether a plea agreement existed, the Court quoted our decision in *State v. Brockman*, 227 Md. 687, 357 A.2d 376 (1976):

> [T]he standard to be applied to plea negotiations is one of fair play and equity under the facts and circumstances of the case, which, although entailing certain contract concepts, is to be distinguished from … the strict application of the common law principles of contracts. The rigid application of contract law to plea negotiations would be incongruous since, for example, the trial

[9] In *Rios*, the parties entered into plea negotiations, and on April 8, 2008 the defendant's attorney offered to have the defendant enter an *Alford* plea to reckless endangerment and be sentenced to time served in exchange for the dismissal of the remaining charges on the express stipulation that the defendant had to agree to the terms. The prosecutor agreed to defense counsel's plea offer. *See Rios*, 186 Md. App. at 358-59, 974 A.2d at 368-69. On April 18th and 21, defense counsel left the prosecutor several messages regarding the defendant accepting the agreement, but did not reach the prosecutor directly. *Id.* at 359, 974 A.2d at 369. On April 22nd, defense counsel asked the prosecutor about allowing a plea of *nolo contendre* to reckless endangerment, which the prosecutor refused. *Id.* Defense counsel then informed the prosecutor that the defendant would accept the plea offer originally made on April 8th. *Id.* Later that week, the prosecutor called and informed defense counsel that no plea was being offered. *Id.* Defendant subsequently filed a Motion to Enforce Plea Agreement. *Id.*

20

court is not ordinarily bound by the compact and, as the State concedes, it cannot obtain "specific performance" of a defendant's promise to plead guilty.

*Rios*, 186 Md. App. at 367, 974 A.2d at 373 (quoting *Brockman*, 227 Md. at 697, 357 A.2d at 382-83) (citations omitted). The Court of Special Appeals concluded,

> In this case, the issue before us is not the construction of a plea agreement, but rather whether any contract was formed. Given that [the defendant] has not detrimentally relied upon the existence of the alleged plea agreement and that there is no suggestion of unfair conduct by the State in the course of the plea negotiations, we see no reason to depart from standard principles of contract law in determining whether the parties ever reached an enforceable plea agreement.

*Id.* at 367, 974 A.2d at 374.

Similar to *Rios*, there is no evidence in the case at bar that Petitioner detrimentally relied on the existence of the alleged plea agreement. In her initial appearance in the circuit court on June 2, 2015, Petitioner pled not guilty to the charge of theft under $100 and requested a jury trial. Although Petitioner alleges the State's action in recommending a harsher sentence after she noted a *de novo* appeal violated her due process rights, as discussed *infra*, the State's conduct prior to the *de novo* proceeding does not unconstitutionally deter her from exercising her statutory right to appeal her conviction. There is no reason, therefore, to depart from the standard principles of contract law and our holding, *supra*, that the plea agreement only applies in the District Court proceeding does not violate the due process clause of the Fourteenth Amendment.

21

### d. Limitations on the Due Process Right to Avoid Prosecutorial Vindictiveness

Petitioner argues that allowing the State to recommend a harsher sentence on *de novo* appeal poses a "realistic likelihood of 'vindictiveness'" that violates her due process right to appeal her District Court conviction. Petitioner relies on two United States Supreme Court cases in support: *Blackledge v. Perry*, 417 U.S. 21, 94 S. Ct. 2098 (1974), and *Thigpen v. Roberts*, 468 U.S. 27, 104 S. Ct. 2916 (1984). In both cases, the Supreme Court considered whether a defendant's due process rights were violated after the defendant was convicted of misdemeanor charges in an inferior court, [10] noted a *de novo* appeal to a superior court, and was indicted and convicted on felony charges based on the same conduct that underlay the misdemeanor convictions. *See Blackledge*, 417 U.S. at 21-22, 94 S. Ct. at 2099; *Thigpen*, 468 U.S. at 28-29, 104 S. Ct. at 2917-18.

In *Blackledge*, the defendant was convicted in North Carolina's district court for misdemeanor assault with a deadly weapon after an altercation with an inmate in a North Carolina penitentiary. *See Blackledge*, 417 U.S. at 22, 94 S. Ct. at 2099-2100. The defendant subsequently noted a *de novo* appeal to the county superior court. *Id.* at 22, 94 S. Ct. at 2100. Prior to the *de novo* proceeding, the prosecutor obtained an indictment from a grand jury charging the defendant with felony assault with a deadly weapon with intent to kill and inflict serious bodily injury, based on the same conduct that underlies the

---

[10] The Supreme Court uses the term "inferior court" to describe the equivalent of Maryland's District Court, and uses the term "superior court" to describe the equivalent of Maryland's circuit courts.

misdemeanor conviction. *Id.* at 23, 94 S. Ct. at 2100. The defendant pled guilty in the Superior Court and was sentenced to a term of five to seven years in the penitentiary. *Id.*

In concluding the prosecutor's actions were unconstitutional, the *Blackledge* Court noted that "the [d]ue [p]rocess [c]lause is not offended by all possibilities of increased punishment upon retrial after appeal, but only those that pose a realistic likelihood of 'vindictiveness.'" *Blackledge*, 417 U.S. at 27, 94 S. Ct. at 2102. The Court opined, however, that the prosecutor's action in that case posed a "realistic likelihood of 'vindictiveness[,]'" and was thus unconstitutional, because

> A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial de novo in the [s]uperior [c]ourt, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals — by "upping the ante" through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy — the State can insure that only the most hardy defendants will brave the hazards of a de novo trial.

*Id.* at 27-28, 94 S. Ct. 2102. The *Blackledge* Court also emphasized that,

> since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his [or her] first conviction, due process also requires that a defendant be freed from apprehension of such a retaliatory motivation on the part of the sentencing judge …. A person convicted of an offense is entitled to pursue his [or her] statutory right to a trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him [or her] to a significantly increased potential period of incarceration.

*Id.* at 28, 94 S. Ct. at 2102-03.

In *Thigpen*, the defendant was convicted of four misdemeanors in a justice of the peace court resulting from a vehicular accident caused by the defendant. *See Thigpen*, 468 U.S. at 28, 104 S. Ct. at 2917. The defendant noted a *de novo* appeal to the circuit court. *Id.* at 28, 104 S. Ct. at 2918. Prior to the *de novo* proceeding, the prosecutor obtained an indictment for felony manslaughter based on the same conduct as the misdemeanor convictions. *Id.* at 28, 104 S. Ct. at 2918. A jury subsequently convicted the defendant of manslaughter, and the defendant was sentenced to twenty years in prison. *Id.* The Supreme Court affirmed its decision in *Blackledge*, and held that *Blackledge* "established a presumption of unconstitutional vindictiveness" when a prosecutor charges a defendant with a harsher crime after the defendant notes a *de novo* appeal from a misdemeanor conviction. *See Thigpen*, 468 U.S. at 30, 104 S. Ct. at 2918.

Petitioner argues that a prosecutor's decision to seek a harsher sentence after a defendant notes a *de novo* appeal to the circuit court is analogous to the factual circumstances underlying *Blackledge* and *Thigpen* because it is another means of "upping the ante" to discourage Petitioner from appealing her conviction. *See Blackledge*, 417 U.S. at 27-28, 93 S. Ct. at 2102. Paraphrasing the *Blackledge* Court, Petitioner argues that "[a] person convicted of an offense is entitled to pursue his [or her] statutory right to a trial de novo, without apprehension that the State will retaliate by recommending a harsher sentence, thus subjecting him [or her] to a significantly increased potential period of incarceration." (internal quotation marks omitted).

As the State argues, there is a key factual difference between *Blackledge* and *Thigpen*, and the case at bar. In *Blackledge* and *Thigpen*, the prosecutor took unilateral

24

action in obtaining new felony indictments against the defendants once they noted their *de novo* appeals.  *See Blackledge*, 413 U.S. at 23, 93 S. Ct. at 2100; *Thigpen*, 468 U.S. at 29, 104 S. Ct. at 2918.  Here, because we concluded, *supra*, the District Court plea agreement was unenforceable on *de novo* appeal, the prosecutor's recommendation of thirty days' incarceration after Petitioner noted the *de novo* appeal is a plea offer that Petitioner is free to accept or reject.  If Petitioner rejects the State's plea offer, the offer dissipates and the State will be forced to take Petitioner's case to trial and prove beyond a reasonable doubt that she committed the alleged theft.  This factual scenario is more analogous to cases relied on by the State: *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663 (1978), *United States v. Goodwin*, 457 U.S. 368, 102 S. Ct. 2485 (1982), and our holding in *State v. Adams*, 293 Md. 665, 447 A.2d 833 (1982).

In *Bordenkircher*, the defendant was indicted for uttering a forged instrument – an offense that was punishable by a term of two to ten years in prison.  *Bordenkircher*, 434 U.S. at 358, 98 S. Ct. at 665.  During subsequent plea negotiations, the prosecutor offered to recommend a sentence of five years in prison if the defendant agreed to plead guilty.  *Id.* The prosecutor also stated during the plea negotiations that if the defendant did not plead guilty, the prosecutor would seek an indictment under Kentucky's habitual criminal act, thereby subjecting the defendant to a mandatory sentence of life imprisonment due to the defendant's two prior felony convictions.  *Id.* at 358-59, 98 S. Ct. at 665.  The defendant pled not guilty, and he was subsequently convicted of the uttering a forged instrument charge and of violating the habitual criminal act.  *Id.* at 359, 98 S. Ct. at 666.  Pursuant to

25

the habitual criminal act, the defendant was sentenced to a life term in the penitentiary. *See id.* at 359, 98 S. Ct. at 665.

The Supreme Court noted in *Bordenkircher* that the due process violations in cases like *Blackledge*, "lay not in the possibility that a defendant might be deterred from the exercise of a legal right, … but rather in the danger that the State might be retaliating against the accused for lawfully attacking his [or her] conviction." *Id.* at 363, 98 S. Ct. 667-68 (citations omitted). The *Bordenkircher* Court held, however, that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id.* at 363, 98 S. Ct. at 668.

The *Bordenkircher* Court also determined that "[w]hile confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his [or her] trial rights, the imposition of these difficult choices [is] an inevitable' – and permissible – 'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Id.* at 364, 98 S. Ct. at 668 (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31, 93 S. Ct. 1977, 1985 (1973)). The Supreme Court concluded that "by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Id.* The *Bordenkircher* Court also concluded that

> [t]o hold that the prosecutor's desire to induce a guilty plea is an "unjustifiable standard," which, like race or religion, may play no part in his charging decision, would contradict the very premises that underlie the

26

concept of plea bargaining itself. Moreover, a rigid constitutional rule that would prohibit a prosecutor from acting forthrightly in his dealings with the defense could only invite unhealthy subterfuge that would drive the practice of plea bargaining back into the shadows from which it has so recently emerged.

*Id.* at 364-65, 98 S. Ct. at 669. Ultimately, the Supreme Court held that

[t]here is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse. And broad though the discretion may be, there are undoubtedly constitutional limits upon its exercise. We hold only that the course of conduct engaged in the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment.

*Id.* (footnote omitted).

In *Goodwin*, the defendant was charged with several misdemeanors, including assault, for striking a police officer with his car in an attempt to flee after being stopped for speeding. *Goodwin*, 457 U.S. at 370, 102 S. Ct. at 2487. The defendant was arrested and arraigned before a United States Magistrate, but fled the jurisdiction prior to trial. *Id.* Three years later, after he was apprehended, the defendant's case was assigned to a Magistrate.[11] *Id.* at 371, 102 S. Ct. at 2487. The defendant entered into plea negotiations, but ultimately elected to plead not guilty and sought a trial by jury in the U.S. District Court. The case was transferred, and the Assistant United States Attorney obtained a four-count indictment charging the defendant with one felony and three misdemeanor counts.

---

[11] The defendant's case was assigned to an attorney from the Department of Justice, who was detailed, on a temporary basis, to prosecute petty crimes and misdemeanor cases. *Goodwin*, 457 U.S. at 370-71, 102 S. Ct. at 2487.

27

*Id.* The defendant was subsequently convicted on the felony count and one misdemeanor count. *Id.*

In declining to apply a presumption of vindictiveness to the actions of the Assistant United States Attorney, the Supreme Court concluded that

> [t]he imposition of punishment is the very purpose of virtually all criminal proceedings. The presence of a punitive motivation, therefore, does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity. Motives are complex and difficult to prove. As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to "presume" an improper vindictive motive. Given the severity of such a presumption, however – which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct – the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists.

*Id.* at 372-73, 102 S. Ct. at 2488. The *Goodwin* Court noted that *Blackledge*[12] involved a defendant exercising a procedural right that resulted in a retrial after the defendant had been once tried and convicted. *Id.* The *Goodwin* Court concluded, however, that under the facts in that case,

> [t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins – and certainly by the time a conviction has been obtained – it is much more likely that the State has discovered and assessed all of the information against the accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a

---

[12] The *Goodwin* Court also cited to *North Carolina v. Pearce*, *supra* footnote 7.

28

change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

*Id.* at 381, 102 S. Ct. at 2492-93 (citations omitted). The Supreme Court held,

[T]he timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Id.* at 381-82, 102 S. Ct. at 2493 (footnotes omitted).

In *State v. Adams*, the defendant was charged in the Maryland District Court with one count of conspiracy to violate the gambling laws. *Adams*, 293 Md. at 666, 447 A.2d at 833. The defendant subsequently sought to dismiss the charging document on the ground it was not signed by a judicial officer as required under the Maryland Rules. *Id.* at 667, 447 A.2d at 833. The defendant's motion was granted, but the following day the State filed a new charging document against the defendant that contained three separate counts of conspiracy to violate the gambling laws. *Id.* at 667, 447 A.2d at 833-34. The defendant again moved to dismiss the charges, alleging the prosecutor acted vindictively in filing three separate conspiracy charges against him after he had successfully moved to dismiss the earlier single-count charging document. *Id.* at 667, 447 A.2d at 834. The defendant argued that he had exercised a constitutional or procedural right in having the first charging document dismissed and the institution of the new charging document – increasing the charges against him – gave rise to the appearance of vindictiveness, together with a realistic apprehension of such vindictiveness, in contravention of the due process clause of the

29

Fourteenth Amendment. *Id.* The trial judge subsequently dismissed the defendant's motion because he found "there is [no] evidence of any realistic apprehension that the prosecutor … retaliated because the defendant … exercised his right to question the legality of the original charging document." *Id.* at 668, 447 A.2d at 834.

Relying on *Goodwin*, we concluded that "a defendant's ability to exercise his constitutional rights must not be chilled by heavy-handed prosecutorial conduct. It is equally true, however, that good faith alterations in a prosecutor's approach to a case should not automatically abrogate the entire potential culpability of a defendant." *Id.* at 674, 447 A.2d at 837. We also acknowledged that "[d]ue process commands courts to imbue the criminal justice system with fairness[,] [but] it does not mandate inappropriate and inflexible palliatives." *Id.* at 675, 447 A.2d at 838. Ultimately, we held that "[the defendant] has not presented any objective evidence of bad faith on the part of the State. [The defendant's] subjective fears, standing alone, are hardly sufficient in light of *Goodwin's* rejection of a pretrial presumption of vindictiveness." *Id.* at 674, 447 A.2d at 837-38.

Because we determined, *supra*, that the District Court plea agreement was no longer enforceable once Petitioner noted her *de novo* appeal to the circuit court, the procedural posture of this case is a pretrial, rather than post-trial, proceeding. The record reflects that after Petitioner noted a *de novo* appeal, she pled not guilty, and the State subsequently offered Petitioner a new plea whereby, in exchange for her guilty plea, the State would recommend that Petitioner serve thirty days' incarceration. Petitioner is free to accept or reject the State's plea offer, and if she rejects it, the State bears the burden of proving at

30

trial that she committed the alleged theft. As the Supreme Court noted in *Bordenkircher*, in the "give-and-take of plea bargaining, there is no such element of punishment or retaliation[,] so long as the accused is *free to accept or reject the prosecution's offer*." 434 U.S. at 363, 98 S. Ct. at 668 (emphasis added). Here, because Petitioner retains the power to accept or reject the State's plea offer there is no "realistic fear of 'vindictiveness'" from the prosecutor's actions.

Additionally, as we observed in *Goodwin*, "[a] prosecutor should remain free before trial to exercise broad discretion entrusted to him to determine the extent of the societal interest in prosecution." 457 U.S. at 382, 102 S. Ct. at 2493. As the State argues, one of the reasons the prosecutor may have sought a harsher sentencing recommendation after Petitioner noted her *de novo* appeal was because he obtained new information during the District Court proceeding that may have changed his opinion on the appropriate punishment. The State notes that during Petitioner's allocution in the District Court she referred to her actions as "just something that happened, [a] mistake," despite the fact she had multiple convictions and stets for similar crimes of theft. Based on this lack of apparent remorse for her actions, it was well within the State's discretion to re-assess whether recommending a sentence of no incarceration would serve the sentencing goal of rehabilitation once Petitioner noted a *de novo* appeal to the circuit court.

## CONCLUSION

In summary, we hold that under the basic contract and due process principles that govern plea agreements, the District Court plea agreement did not extend to the *de novo* circuit court proceeding. We also hold that, although Petitioner's claim regarding her due

31

process right to avoid prosecutorial vindictiveness in noting a *de novo* appeal was not preserved, under Maryland Rule 8-131(a) we may still consider Petitioner's claim because doing so will not unfairly prejudice either party and considering the issue will provide important guidance on the constitutionality of the prosecutor's conduct during plea bargaining in Maryland's two-tier trial system. Finally, we hold that because Petitioner was free to accept or reject the State's new plea offer, the prosecutor's actions did not generate an unconstitutional "fear of vindictiveness" that contravened the due process clause of the Fourteenth Amendment.

**JUDGMENT OF THE CIRCUIT COURT FOR ALLEGANY COUNTY IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**